HENRY T. THURBER AND CLIFFORD ELLIOTT, EXECUTORS, ETC., V. MARGRETTE SINCLAIR BATTEY.

*Construction of will—Fund for payment of legacies.*

1. The rule that "the cardinal principle of interpretation of wills is to carry out the intention of the testator, if it is lawful, and if it can be discovered," and that "the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole," is universal, and cases are of little value to the courts as precedents unless they substantially agree in their facts with the case under consideration,—a circumstance of rare occurrence.

2. A testator was possessed of no other property aside from his household goods and personal effects, which were specifically bequeathed, except that mentioned in the tenth clause of his will, and that devised to him by his uncle, subject to a life estate in his aunt, whose life expectancy was 20 years. After making several bequests, mainly for the support and education of certain minor children, the testator, in the tenth clause of his will, bequeathed to his executors the moneys realized from his life insurance, his interest in certain specified firms, and any interests he might have or be entitled to growing out of any business connection he then had, or into which he might thereafter enter. The executors were to collect the insurance, close out the interest in any business with which the testator might be connected, invest the proceeds, and pay the net income derived therefrom to the testator's sister. In case she died without leaving lawful issue, a specified portion of the fund was bequeathed to a certain

person, and the remainder was to be disposed of as his said sister should by her will direct. It was further provided that should the sister's issue, her surviving, die before marriage or during their minority, the specific bequest should become operative. Shortly before his death the testator wrote to his said sister that he had made his will, that she was amply provided for *at once* in case of his death, and that a liberal share of the property devised to him by his uncle was hers in case of the death of his aunt and himself. This property was valued at $55,000, and was charged with the payment of ·$6,100 in legacies, which, with the bequests made therefrom by the testator and those claimed by his sister to be payable therefrom, would consume nearly all of said property. The sister contended in a suit to construe the will that clause 10 was a specific bequest to her of all the property therein mentioned, and that the prior bequests must abate either wholly or until the amounts thereof could be realized from the property devised to the testator by his uncle. And it is held that, if this contention be sustained, the statement in the testator's letter that he had provided the sister with a liberal share of said property would be meaningless; that the payment of the bequests out of the property mentioned in the tenth clause of the will gives meaning to the letter, and leaves from $22,000 to $25,000 of the property received from his uncle for the sister, which construction is adopted.

Appeal from Wayne. (Carpenter, J.)   Argued April 30, 1895.  Decided July 2, 1895.

Bill to construe a will.  Defendant appeals.  Decree affirmed.  The facts are stated in the opinion.

*Charles B. Warren (Elliott G. Stevenson,* of counsel), for complainants.

*Alfred Russell,* for defendant.

GRANT, J.  The bill in this case is filed to obtain the construction of the will of Samuel B. Sinclair. It was executed May 7, 1892, and he died the 30th of the same month. The first and second clauses provided for his debts and funeral expenses, a headstone for his grave, and the specific bequest of his household furniture.

Clauses 8 and 9 are also specific bequests. It is necessary to give the remainder of the will in full, and it reads as follows:

"3. I give, devise, and bequeath to my executors and trustees, hereinafter named, the sum of $12,000, in trust for the following purpose: I desire them to invest the same as, in their judgment, they deem best, and to pay the net income derived therefrom to my sister-in-law ———— Sinclair, wife of my brother Charles M. Sinclair, for the joint support of her and their children, and the education of their children, until the youngest child shall attain the age of 21 years, at which time I direct said $12,000 to be divided, share and share alike, between the issue of my said brother and ———— Sinclair. Should there not be lawful issue of my said brother living, under which this bequest could become operative, I direct my executors and trustees to pay said $12,000 to my sister Margrette Sinclair Battey, her heirs.

"4. I give, devise, and bequeath to my executors and trustees the sum of $3,000, in trust for the following purpose: I desire them to invest said sum as they deem best, the income derived therefrom, and the principal, as fast as may be necessary, in their judgment, to be paid to Mrs. George T. Olmstead, for the education of her daughter Jennie, it being my desire that all of said sum and the income be used for the education of said Jennie Olmstead; and it is my wish that her mother apply such portion of said sum in the payment of her own expenses as to her may seem proper in accompanying her said daughter to the pursuit of her education.

"5. I give, devise, and bequeath to Frances Charlotte Dickinson and Don M. Dickinson, Jr., children of Don M. and Frances P. Dickinson, the sum of $2,500 each, to be paid to their parents, and invested by them as they may deem best; the principal and accumulation of such bequests to be turned over to said children, respectively, as she or he shall arrive at legal majority; in the event of the death of either before attaining legal majority, the whole to go to the survivor of them.

"6. I give, devise, and bequeath to Mrs. Thomas A. Stephen, of Galt, Ontario, the sum of $1,500.

"7. I give, devise, and bequeath to my uncle David A. Sinclair my gold watch and chain, with the request that at his death he leave it to Walter S. Sinclair; also the

sum of $6,000, $1,000 of which to be paid out of that portion of my estate situate in Detroit, and $5,000 out of the estate left me by my uncle Robert P. Sinclair, as hereinafter provided; provided, however, that, when he shall receive said $5,000, he shall receive the same in lieu of the annuity in my said uncle's will provided for him. *   *   *

"10. I give, devise, and bequeath to my executors and trustees all my life insurance and the moneys realized therefrom, and all my interests in the firm of Sinclair, Evans & Elliott, and all interests in the new firm of Sinclair, Elliott & Co., about to be formed, and all property and interests I may have or be entitled to growing out of any business connection I now have, or into which I may hereafter enter, in trust for the following purposes: I direct that all the moneys on my life insurance policies be collected, and my interests in any business with which I may be connected be closed out as may be convenient, and without injury to the firms in which I may be interested, and the proceeds thereof invested by my trustees as they deem best, and the net income derived therefrom to be paid to my sister Margrette Sinclair Battey, during her natural life. Should my said sister die without leaving lawful issue her surviving, I give, devise, and bequeath out of said fund the sum of $25,000 to Frances Platt Dickinson, wife of Don M. Dickinson, and her heirs, forever, the balance of said fund to go as my said sister in her last will may direct; provided, however, that should her issue, her surviving, die before marriage or before legal majority, said bequest to Frances Platt Dickinson shall become operative.

"11. All the rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath to my executors and trustees, with power to sell the same or any portion thereof as they may deem for the best interests of my estate, in trust, for the following purposes: I desire them to take possession of the same, to manage and invest the interest derived therefrom, and accumulate a fund. I include herein the property inherited from my uncle Robert P. Sinclair, so far as may be consistent with and subject to the provisions of my said uncle's will. I desire my executors and trustees to accumulate such portion of the income derived from said estate as may be agreed upon with the executrix named in my said uncle's will, after the payment of all taxes, charges, and such sums as may be needful for repairs and the preservation

of the property, and after conforming to the provisions of said will with reference to annuities, and the allowance to my said aunt, Julia H. Sinclair, of such further sums as to my executors and trustees shall seem needful for her comfort and welfare, and add to such fund so provided. After the death of my said aunt, I desire my executors and trustees to take absolute possession of said estate, and manage the same; to add the net income derived from said estate to said fund, until said fund shall be sufficient to pay all the legacies provided to be paid in my uncle's will, when I direct the same paid. I hereby empower my executors and trustees to sell such portion of the real and personal estate as to them shall seem best, and add the proceeds thereof to said fund, or to invest the proceeds, and add the income derived therefrom to said fund. When said legacies shall have been paid from said fund, I direct my executors and trustees to sell all the real and such portions of the personal property as to them shall seem best, and to pay from the proceeds thereof the following sums: To my cousin Walter Scott Sinclair the sum of $10,000; to my cousin Mrs. George F. Johnson, $2,500; to Mrs. Kate Chauncey, of Brooklyn, N. Y., $2,500; to Mrs. Charles E. Hill, formerly of Chicago, $2,500. Having, in clause 7th of my will, bequeathed the sum of $6,000 to my uncle David A. Sinclair, I now direct that $5,000 of said sum be paid him when the above bequests are paid, subject, however, to the conditions in said clause mentioned. All the rest, residue, and remainder of my property I direct turned over to my sister Margrette Sinclair Battey, and her heirs, forever."

"The cardinal principle of interpretation of wills is to carry out the intention of the testator, if it is lawful, and if it can be discovered." *Eyer v. Beck*, 70 Mich. 179; *Hone v. Van Schaick*, 3 Barb. Ch. 488; *Hibler v. Hibler*, 104 Mich. 274.

"No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole." *Colton v. Colton*, 127 U. S. 309.

This rule is universal, and cases are of little value to the courts unless they substantially agree in their facts with the case under consideration,—a circumstance of

rare occurrence. Extraneous circumstances are some-times proper for consideration.

The contention of the appellant is that clause 10 of the will is a specific bequest to her of all the property therein mentioned, and that the bequests in clauses 3, 4, 5, 6, and 7 must abate either wholly or until the amounts therefor can be realized from the property which was devised to the testator by the will of his uncle Robert P. Sinclair. The testator was very ill at the time of the execution of the will, and we think it a fair inference that he executed it in contemplation of death. He was possessed of no other property aside from his household goods and personal effects, which were specifically bequeathed, except that mentioned in clause 10 and that devised to him by his uncle. Under the will of Robert P. Sinclair, his widow had a life estate in all the property, both real and personal. She was 50 years old, in good health, and, according to the life tables, had an expectancy of 20 years of life. The children of Charles M. Sinclair were, at the date of the testator's death, 3 and 4 years old, respectively; Jennie Olmstead, 13; and the two children of Don M. Dickinson, 3 and 8 years, respectively. The testator was the sole support of his brother Charles and his family. Did the testator intend the legacies to his brother's children, as well as the other bequests, should be postponed until the death of the widow of Robert P. Sinclair, and at her death be paid out of that fund? Such is the appellant's contention. It is not possible to read this will and come to that conclusion. These children, for whose education he provided, would, before they could receive any benefit of these bequests, have passed the age during which children are usually educated. The two children of Mr. Dickinson would have passed the age of 21, when they were to come into the possession of the fund and it accumulations, while the intent is clear that the fund is to take effect at his death, and be placed in the hands of trustees to accumulate. Under appellant's construction, there could be no fund to accumulate until

the death of Mrs. Robert P. Sinclair. The statement of the facts is the strongest argument that the testator intended that the beneficiaries named should commence to receive the benefit of these legacies immediately upon his death. The property mentioned in clause 10 was of the value of about $47,500. After paying these legacies and the expenses of administration, there would still be left from $20,000 to $25,000 to invest for the benefit of Mrs. Battey,—nearly or quite half of the Detroit property. As already stated, the testator's interest in the Grand Rapids property devised to him was not available, and he clearly understood and intended, as appears from his own will, that that property would not and could not be used until the death of his aunt. If, therefore, it be held that he intended that these legacies should eventually be realized from that property, the beneficiaries for whose support and education he provided would be deprived of that which the terms of the will expressly gave them.

The appellant introduced a portion of a letter written to her by the testator shortly before his death, which shows his intention that these bequests should be paid out of the property mentioned in clause 10. It reads as follows:

- "My own will I made since my sickness, and you are amply provided for at once in case of my death, and a liberal share of G. R. [Grand Rapids] property in case of two deaths, Julia and myself."

The Grand Rapids property was valued at about $55,000. The legacies to be eventually paid according to the will of his uncle were $6,100. Add to this the bequests from this fund under clause 11 of Samuel B. Sinclair's will and the bequests now in dispute, and they would consume nearly all of the Grand Rapids property. If, therefore, the contention of the appellant be sustained, the statement in this letter that he had provided her with a liberal share of that property would be meaningless. The payment of these legacies in controversy out

of the Detroit property gives meaning to the letter, and leaves from $22,000 to $25,000 of the Grand Rapids property for her.

We think that the intention of the testator clearly appears within the four corners of the instrument, and that no reasonable person can read it without concluding that the testator intended that these objects of his love and affection should at once receive the benefit of his bequests, and that they were to be provided for out of the only fund which was available for that purpose. The following cases are somewhat analogous to the present one: *Thayer v. Finnegan,* 134 Mass. 62; *McCorn v. McCorn,* 100 N. Y. 511; *Bevan v. Cooper,* 72 N. Y. 323.

Decree affirmed.

The other Justices concurred.