ROSE HILES ET AL., APPELLANTS, V. FRED G. BENTON, SHERIFF: HARRY J. HILES, INTERVENER, APPELLANT: CITY LOAN & INVESTMENT COMPANY, INTERVENER, APPELLEE.

FILED JANUARY 15, 1924. No. 23545.

Execution: LIFE ESTATE. A devise, quoted as follows: "All the rest and residue of my property * * * I give and bequeath to my son, Harry Hiles, * * * so long as he shall live, but

without power or authority to sell, mortgage, or to in any manner incumber any part of the real estate that I leave and in which I give and bequeath to him a life use. That there may be no mistake or misunderstanding as to my intention and purpose, I here state that it is my purpose and intention that my son, Harry Hiles, shall have the use of my real estate during his life, without power and authority to sell, mortgage, or to in any manner alienate said use for any purpose"—is effectual to prevent the devisee from voluntarily conveying or incumbering any of the property therein mentioned, and is also effective to prevent the sale of the same upon execution duly issued upon a judgment obtained against him.

APPEAL from the district court for Dawson county: J. LEONARD TEWELL, JUDGE. *Reversed, with directions.*

*Hainer, Craft, Edgerton & Frazier*, and *T. M. Hewitt*, for appellants Rose Hiles, *et al.*

*Beeler, Crosby & Baskins*, for appellant Harry J. Hiles.

*W. A. Stewart, Fred C. Foster, O. K. Perrin* and *S. M. Kier*, for appellee.

Heard before MORRISSEY, C. J., LETTON, DEAN, DAY and GOOD, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, DISTRICT JUDGE.

Judgment having been obtained against appellant Harry J. Hiles, an execution was duly issued thereon and levied on the life use of said Hiles in certain lands devised to him by his father. Injunction was brought to prevent sale on said execution; the contention of the plaintiffs being that under the will said interest was not subject to alienation, even by a creditor. The district court held that the use was subject to execution, and also that a contract by which Hiles had attempted to convey his interest, or a portion thereof, to his wife before the levy was made was in fraud of creditors and void.

The main contention is that the life interest, or life use, or life estate received by Hiles, regardless of what it may be called, is not subject to sale under execution, because such sale is inhibited by the provisions of the will

Hiles v. Benton.

of Hiles, deceased; the appellants insisting that the will expressly provided against any alienation whatever, voluntary or involuntary. The particular provision of the will of the elder Hiles was as follows:

"All the rest and residue of my property * * * I give and bequeath to my son, Harry Hiles, * * * so long as he shall live, but without power or authority to sell, mortgage, or to in any manner incumber any part of the real estate that I leave and in which I give and bequeath to him a life use. That there may be no mistake or misunderstanding as to my intention and purpose, I here state that it is my purpose and intention that my son, Harry Hiles, shall have the use of my real estate during his life, without power and authority to sell, mortgage, or to in any manner alienate said use for any purpose."

There is no evidence in the record extrinsic of the will to show what was the intention of the testator, and none to assist the court in determining how the provision quoted should be construed. None was offered. There is nothing to show that the testator had any peculiar or particular understanding of the meaning of the words and phrases employed by him in the drafting of his will, and nothing to indicate that any one learned in the law had advised him that the language used would be given any special or settled construction. The provision under consideration must be interpreted by well-known rule from the text itself.

Regardless of the English rule, past or present, we hold in this case that a testator may convey or devise land for the benfit of his son in such wise that the latter may have all of the rents and profits of the same for life, and yet provide that it may neither be sold by his son, nor by his son's creditors, for debt or for any other purpose. We are not bound by the view that certain technical words in wills or deeds which import a fee will be held controlling so as to peremptorily discard whatever words of qualification may follow. Such may have been the implication of *Loosing v. Loosing*, 85 Neb. 66, but in *Kluge v. Kluge*, 103 Neb. 534, and *Grant v. Hover*, 103 Neb. 730, and other com-

Hiles v. Benton.

paratively late cases, this court has plainly said, following the Nebraska statute, that it is the intention of the testator which will govern, and not the mere letter of his language. The court stands upon this ground, again approving the statement of Judge Sullivan in *Weller v. Noffsinger*, 57 Neb. 455:

"No rule of law is better settled, or more in accord with good sense, than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, no conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it."

Commenting further upon the point, which has been the subject of much discussion in the consultation room, Judge Redick submits the following, which seems to the writer particularly apropos:

"The rigid rule of the common law that, where an estate has been conveyed or devised directly to the grantee or devisee, all subsequent restrictions upon the nature or quality of the title, or upon the manner of the enjoyment of the estate, are void, has been relaxed by the provision of our statute that any instrument conveying or creating any interest in real estate shall be construed so as to effectuate the intention of the testator gathered from the language of the will, provided only that such construction is not violative of any rule of law. It occurs to me that the rule of law here spoken of does not include legal rules of construction in conflict with the very rule of construction sought to be established by the statute, for this would be a *felo de se;* and this consideration alone seems to me a sufficient reason for rejecting the common-law rule as applied to the instrument in question, which clearly evinces the intention of the testator to secure to his son, during life, the full beneficial use of the property in question. The logic of the opinion

of Justice Miller in the case of *Nichols v. Eaton,* 91 U. S. 716, seems unanswerable."

Did Hiles, Sr., intend, not only to prevent his son from voluntarily disposing of the estate granted to him, but also to place that estate beyond the reach of creditors by execution upon judgment?  This inquiry is ably argued to a negative conclusion in appellee's brief.  Let us consider the language that he employed in his devise to Hiles, Jr.  The fundamental rule is that the words of a will are to be given their plain and ordinary meaning, because that is the way to get at the intention of the user of them.  He knows nothing of particular legal meanings attaching to certain words, nothing at all of canons of construction.  He gets his knowledge of words from the common word book of the people, the dictionary.  The plain and ordinary meaning of the word "alienate" is, "To convey or transfer to another, as title, property, or right; to part voluntarily with the ownership of."  This is the definition of Webster.  Notice the word "voluntarily."  It is not only possible, but probable, that this is what the testator meant when he wrote into his will the provision in question.  This court should aid a testator or grantor in giving to his deed or will that construction which he obviously intended it to have.  But it should not be disposed to extend the meaning of his language to the point of including all that some one else might have meant by it.  It should not be disposed to extend said meaning so as to defeat the honest claim of a creditor, when it is not clear that such was the intention of the testator.  In 2 C. J. 1035, alienation is defined as follows:

"The passing of a thing from another, or the separation of two things; a transfer by conveyance; a transfer of the title of property; the transfer of the property and possession of lands, tenements, or other things, from one person to another; the voluntary and complete transfer of property from one person to another; the act by which the title to an estate is voluntarily resigned by one person and accepted by another in the forms prescribed by law; the act by which

title to real property is voluntarily transferred by one person and accepte 1 by another; a mode of obtaining an estate by purchase, by which it is yielded up by one person and accepted by another. In its broadest sense, alienation comprises any method wherein estates or property are voluntarily resigned by one man and accepted by another; whether that be effected by sale, gift, marriage, settlement, devise, or other transmission of property by mutual consent of the parties. In other words, the term embraces every mode of passing real estate by the act of the parties, as distinguished from passing it by operation of law."

In *Butler v. Fitzgerald*, 43 Neb. 192, the court construed the word "aliened" as it is ordinarily understood, and as it was defined by Webster, and by the foregoing excerpt from Corpus Juris. It may be argued that the testator was at great pains to make his restriction against alienation all-inclusive, iterating and reiterating to that end. Iterating and reiterating what? Simply that his son shall not alienate. If alienate means to voluntarily dispose of, the repeating of the word, by saying, "in any manner alienate said use for any purpose," adds nothing except to include other forms of voluntary disposition than those already mentioned. It does not supply the element of involuntary alienation or disposition. Not only should we not read into Hiles' will something that he was unwilling to put there himself, but we should read nothing into it that he *might* have been unwilling to put there. He did not see fit to provide that the life estate willed to Hiles, Jr., should not be accessible to his son's creditors upon judgment obtained and execution issued, and, applying the rule with fidelity, the court cannot properly do so.

The foregoing argument is entirely persuasive to the writer, but the majority of the court is clearly of opinion that the intention of the testator was to provide against the alienation here attempted, as a species of voluntary alienation on the part of his son.

The prevailing view is that, conceding that the word alienation necessarily involves the idea of a voluntary act,

we are not confined to the question of whether or not the devisee executed a conveyance for the purpose of accomplishing the alienation, but may consider all of the things he did in bringing about the result, that is to say, his voluntary purchase of the airplane and the sale upon execution which was the final consequence of that voluntary act. Suppose the devisee purposely permitted the taxes to accumulate on the property, and the property to be sold to a third person, by whom he caused it to be conveyed to his appointee, would not this be considered a voluntary alienation, leaving out any consideration, of course, of the rights of the public? Is there any difference between that situation and the present one? The devisee voluntarily incurred a debt, which act on his part is the basis of the claim of appellees under the execution. The better holding, and the one which we adopt, is that the testator intended to protect the life estate in the hands of the devisee against any voluntary alienation by him, and that any alienation which has for its basis the voluntary act of the devisee is within the restriction.

The trial court found for the appellees solely upon the common-law rule first above discussed and disapproved. The judgment is reversed and the cause remanded to the district court for decree in accordance with this opinion.

REVERSED.

GOOD, J., dissents.