CATHERINE MAJERUS ET AL., APPELLANTS, V. THERESA SANTO ET AL., APPELLEES.

10 N. W. (2d) 608

FILED AUGUST 6, 1943.   No. 31619.

*Joseph L. Gagnon* and *J. H. Falloon,* for appellants.

*Paul P. Chaney, Cain & Cain, Archibald J. Weaver, Wiltse & Wiltse, Paul F. Good, Wallace Hawkins* and *Earl A. Brown, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Richardson county by Catherine Majerus, Anna Caverzagie, Mary Wissman, Louise Sprung, Theresa Larson, Sophia Reschke, and Lawrence Santo, as plaintiffs and who are appellants here, against Theresa Santo, Charles Santo, Fred Santo, Richardson County Bank of Falls City, Nebraska, a corporation, Magnolia Petroleum Co., a corporation, William Herbster, and Paul P. Chaney, Administrator, with the will annexed, of the estate of Charles J. Santo, deceased, as defendants and who are appellees here, for the purpose of canceling and setting aside a deed to certain lands described in their third amended petition or in the alternative for the specific enforcement thereof and for a determination of the rights of the plaintiffs in and to said lands and for partition thereof. From an order of the district court sustaining the demurrers of each and all of the several defendants and dismissing the action, the plaintiffs have appealed.

The demurrers of the several defendants raise the following questions: "First, that there is a misjoinder of parties plaintiff; second, that there is a misjoinder of parties defendant; third, that there is a misjoinder of the causes of action; fourth, that the facts alleged are insufficient to state a cause of action. In considering the court's ruling on these demurrers, we must, of course, apply the rule as announced in *Van Horn v. Lincoln Sales Outlet Co.*, 127 Neb. 301, 255 N. W. 36: "A demurrer is an admission of the truth of all facts properly averred in the pleading demurred to; it admits, however, only such facts as are well pleaded and all intendments and inferences that may fairly and reasonably be drawn therefrom."

The third amended petition, to which the several demurrers of the defendants were directed and which demurrers the court sustained, alleged that Josephine Santo, who prior to her marriage to Charles J. Santo was Josephine Litty and a daughter of Magnus Litty and Annie Litty, inherited from her parents 160 acres of land in Butler county, Nebraska, and also her distributive share of their personal property; that after her marriage to Charles J. Santo a part of these funds were used on April 21, 1883, to purchase the southeast quarter of section 4, except 20 acres off the west side thereof, in township 2, range 17, in Richardson county, Nebraska, and on February 8, 1889, a part of these funds were used to purchase the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter, and a tract of land described by metes and bounds as commencing at the northeast corner of section 5, and running south 60 rods, west 80 rods, north 20 rods, east 40 rods, north 40 rods, east 40 rods to place of beginning, all in section 5, township 2, range 17, in Richardson county and both tracts contained approximately a total of 240 acres and were taken in the name of Charles J. Santo and Josephine Santo as tenants in common; that Josephine Santo died intestate May 19, 1895, and at the time of her death she owned an undivided one-half interest in the aforesaid real estate and also possessed personal prop-

erty consisting of money, cattle, horses, and other livestock and left surviving her besides her husband, Charles J. Santo, all of the plaintiffs, who are her children, and a daughter Josephine Santo who died subsequent to her mother and at the time of her death was a minor and not married; that the father, Charles J. Santo, took possession of said real estate and personal property without administering the estate and collected rents and profits from the real estate and used the personal property as his own; that subsequently, on February 3, 1906, from the rents and profits of the lands in which the mother had an undivided one-half interest at the time of her death, Charles J. Santo purchased the northeast quarter of the northeast quarter of section 9 and the north half of the northwest quarter of section 10, township 2, range 17, in Richardson county, being 120 acres, and on October 4, 1911, from the rents and profits of this same land he purchased the south half of the northwest quarter of section 10, township 2, range 17, in Richardson county, being 80 acres, and from the same source did on May 23, 1914, purchase the south half of the northeast quarter and the southeast quarter of the northwest quarter and the northeast quarter of the southeast quarter of section 9, township 2, range 17, in Richardson county, being 160 acres.

That Charles J. Santo remarried and the defendant Theresa Santo is his widow and the defendants Charles Santo and Fred Santo are children born of the second marriage. On July 26, 1919, all of the plaintiffs, except Lawrence Santo, entered into an agreement of settlement with Charles J. Santo, their father, as to the personal property of their mother and for the use and rentals of the real estate of which she died seised of an undivided one-half interest and also for a deed conveying their interest in and to the premises of which their mother died seised and in consideration therefor, and prior to its execution, their father, Charles J. Santo, agreed he would not sell or convey the lands therein described and would hold it free of encumbrances, that he would not make a will and at the time of his death all of his children, by both his first and second marriage, should

share in his estate, and that he would not convey any of the lands or encumber them, of which he was then owner, and which lands are described in the petition, which said deed contained the following: "And the further consideration that said Charles J. Santo agrees to die intestate, and not alienate the property hereinafter described and that his children, above named, born as the fruit of his marriage with the said Josephine Santo, nee Litty, deceased, shall inherit and share in his estate the same as the children of said Charles J. Santo born of his second marriage, * * * " and at the time of said agreement Charles J. Santo was the owner and in possession of the 360 acres of land purchased from the rents and profits of the 240 acres as previously stated. Since the agreement, the plaintiffs have made no demands upon the said Charles J. Santo for any rents and profits of said premises and have fully complied with the agreement, but that the said Charles J. Santo violated and broke the conditions of the agreement by giving to the Richardson County Bank on March 17, 1936, a mortgage for $8,000 signed by himself and wife, Theresa Santo, on the southeast quarter of section 4, except 20 rods off the west side thereof, and the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of section 5, all in township 2, range 17, in Richardson county, and by giving to C. J. Taylor on January 28, 1939, a gas and oil lease on the southeast quarter and the southwest quarter and the southwest quarter of the southeast quarter, section 5, township 2, range 17, in Richardson county, which has been assigned to the defendant Magnolia Petroleum Co., and on November 14, 1939, by giving an oil and gas lease to O. E. Bradley on the southeast quarter of section 4, township 2, range 17, except a strip 20 rods wide off the west side thereof, and which has been assigned to the defendant Magnolia Petroleum Co., and also by making a will on January 21, 1939, wherein he gave all of his property, real and personal, to his widow, Theresa Santo, and leaving nothing to the plaintiffs contrary to the provisions of the agreement. The defendant William Herbster claims to be the owner of the

piece of land, approximately 20 acres, described by metes and bounds in section 5, township 2, range 17, by reason of conveyances from Charles J. Santo. Charles J. Santo, Jr., and Fritz Santo, who are the same persons as Charles Santo and Fred Santo, defendants, have a deed to the south half of the northeast quarter, the southeast quarter of the northwest quarter, and the northeast quarter of the southeast quarter of section 9, township 2, range 17, from Charles J. Santo and Theresa Santo, as husband and wife, dated October 7, 1935. Charles J. Santo died testate on April 14, 1942, leaving a will which gave all interests in his property, real and personal, to his widow, Theresa Santo, and Paul P. Chaney has been appointed administrator with will annexed of said estate which is being administered in the county court of Richardson county and an order has been entered therein barring claims and claims in the amount of $797.75 have been allowed. The personal property is in the sum of $960.82 together with the rentals of the premises herein described for the share of deceased's interest therein for the year 1942. Besides the personal property of Charles J. Santo at the time of his death, he was seised of the original 240 acres, except the tract of 20 acres deeded to the defendant William Herbster, and of the 360 acres purchased, he was seised of all but the 160 acres deeded to his two sons of his second marriage, Charles J. Santo, Jr., and Fritz Santo. Whatever interest any of the defendants may have in and to the premises in so far as the plaintiffs' rights thereto are concerned are subsequent and inferior and prays that the deed of July 26, 1919, conveying their interest in the 240 acres as inherited from their mother be set aside and canceled and held for naught or in the alternative to enforce the agreement and to set aside the will and decree Charles J. Santo to have died intestate in so far as it affects the plaintiffs' rights in and to his estate by reason of the agreement and that the interests of the parties in and to said premises be determined and that the interests of the plaintiffs be declared clear of all liens and encumbrances and that the rights of all the

defendants be subsequent and inferior thereto and that a partition thereof be had and a referee appointed for that purpose and for the purpose of collecting the rents and profits therefrom.

The first question here for consideration is, did the appellants' petition state a cause of action? Under section 76-109, Comp. St. 1929, this court has held in *Hiles v. Benton*, 111 Neb. 557, 196 N. W. 903: "The rigid rule of the common law that, where an estate has been conveyed or devised directly to the grantee or devisee, all subsequent restrictions upon the nature or quality of the title, or upon the manner of the enjoyment of the estate, are void, has been relaxed by the provision of our statute that any instrument conveying or creating any interest in real estate shall be construed so as to effectuate the intention of the testator gathered from the language of the will, provided only that such construction is not violative of any rule of law. It occurs to me that the rule of law here spoken of does not include legal rules of construction in conflict with the very rule of construction sought to be established by the statute, for this would be a *felo de se, * * * ."* But the correct rule as to the construction of this statute is properly stated in *Stuehm v. Mikulski*, 139 Neb. 374, 297 N. W. 595: "Section 76-109, Comp. St. 1929, commonly known as 'the intent statute,' relates only to rules of construction, and does not enlarge or limit, or in any way modify, any rule of substantive law that existed at the time of its passage or that thereafter has been created." That the agreement, contained in the instrument of conveyance, does not create a condition subsequent is well settled by the authorities, for as stated in *Davis v. Skipper*, 125 Tex. 364, 83 S. W. (2d) 318: "There are many authorities to the effect that a recital in the deed of conveyance that it is made upon a money consideration, and a further consideration that the grantee shall do certain things, or that only a certain use shall be made of the property, does not impose a condition and does not create an estate upon a condition subsequent. 8 R. C. L. p. 1101; 18 C. J. pp. 353-354; *Board of*

*Councilmen v. Capital Hotel Co.*, 188 Ky. 754, 224 S. W. 196; *Adams v. First Baptist Church*, 148 Mich. 140, 111 N. W. 757; *Fraley v. Wilkinson*, 79 Okla. 21, 191 Pac. 156." And in *Ruggles v. Clare*, 45 Kan. 662, 26 Pac. 25: "The authorities are uniform, that estates upon condition subsequent, which, after having been fully vested may be defeated by a breach of the condition, are never favored in law, and that no deed will be construed to create an estate upon condition, unless the language to that effect is so clear that no room is left for any other construction." Whether the agreement contained in the instrument is called a covenant or a contract seems immaterial for the appellants would be entitled, upon proper showing, to either rescission or specific performance. In a similar case, where the consideration in the agreement, to construct and erect upon the lot conveyed a business building of a certain type within a certain length of time, was breached by failure to perform, the court held that the grantor was entitled to either specific performance or rescission by cancellation of the deed. *Willard v. Ford*, 16 Neb. 543, 20 N. W. 859. And in *Bennett v. Moon*, 110 Neb. 692, 194 N. W. 802, we held that, courts of equity will, under a proper state of facts, specifically enforce contracts concerning real estate. That courts of equity will grant specific performance of contracts to leave property to others, under the proper circumstances, has long been the law in this state. *Lennox v. Anderson*, 140 Neb. 748, 1 N. W. (2d) 912; *Craig v. Seebecker*, 135 Neb. 221, 280 N. W. 913; *Best v. Gralapp*, 69 Neb. 811, 96 N. W. 641, and the authorities cited therein. We have held that in a grant or a devise of real estate to a designated person in fee simple with provisions therein that are inconsistent or repugnant thereto such as a restriction against the power to sell, mortgage or otherwise encumber, such provisions are void, *State Bank of Jansen v. Thiessen*, 137 Neb. 426, 289 N. W. 791; *Moffitt v. Williams*, 116 Neb. 785, 219 N. W. 138; *Grant v. Hover*, 103 Neb. 730, 174 N. W. 317. As stated in *Grant v. Hover, supra*: "When, however, there are different provisions in the same will as to

the disposition of specified property, they must be construed together to ascertain the intention of the testator." Although, in *Peters v. Northwestern Mutual Life Ins. Co.,* 119 Neb. 161, 227 N. W. 917, where the devise to the son was in fee, we held that a restriction against alienation until the devisee became 35 years of age was a reasonable restraint and valid. See, also, 4 Thompson on Real Property (Perm. ed.) sec. 2083. However, when the estate in fee does not pass, but a lesser estate is created, then provisions against alienation are valid. *Hiles v. Benton, supra; Nebraska National Bank of Minden v. Bayer,* 123 Neb. 391, 243 N. W. 115; *Drury v. Hickinbotham,* 129 Neb. 499, 262 N. W. 37, 4 Thompson on Real Property (Perm. ed.) sec. 2081. In construing the provisions of this deed, parts of which have heretofore been set forth, under this statute which applies to deeds, *Blochowitz v. Blochowitz,* 130 Neb. 789, 266 N. W. 644, wills, *Peters v. Northwestern Mutual Life Ins. Co., supra,* and all other instruments conveying real estate or any interest therein, we will not be bound by the view that certain technical words, which will import a fee, will be held controlling so as to peremptorily discard whatever words of qualification that may precede or follow, but will seek the true intent of the grantors in so far as it does not conflict with our construction of the intent statute. The granting clause and habendum of the deed, standing alone, would give to the grantee a fee simple title, however, the deed further provides: "That said Charles J. Santo agrees to die intestate, and not alienate the property hereinafter described and that his children, above named, born as the fruit of his marriage with the said Josephine Santo, nee Litty, deceased, shall inherit and share in his estate the same as the children of said Charles J. Santo born of his second marriage, * * * ." Considering all of the provisions of this deed it shows that in consideration of the premises conveyed the grantee, who is the father of the grantors, agreed to die intestate, and permit certain of his children to inherit his estate according to the provisions of the statute of descent and further that he would not alien-

ate the property therein described. This agreement on the part of the grantee to die intestate and leave his property to certain of his children is a valid and enforceable agreement and thereby created in the grantors an interest in the premises. As stated in 26 C. J. S. 478, sec. 145: "A valid and enforceable intent to reserve some right to the grantor touching alienation of the land must be given full effect, and, where the grantor retains an interest in the property granted, such interest generally will support the imposition of a restriction on alienation." *Sloman v. Cutler*, 258 Mich. 372, 242 N. W. 735; *Bank of Hartford v. Buffalow*, 217 Ala. 583, 117 So. 183; *Iowa Farm Credit Corporation v. Halligan*, 214 Ia. 903, 241 N. W. 475. Where the owners of an interest in real property convey the same but by agreement contained in the instrument of conveyance retain an interest in the premises, such interest will support the imposition of a restriction on alienation where it is reasonably necessary to protect the interest retained. The third amended petition of the appellants therefore states a good cause of action.

The second question raised by the appeal is the question of a misjoinder of causes of action. The prayer of the petition seeks cancelation of the deed or in the alternative to have a specific performance of the terms and provisions thereof. While we have said in *Central Nebraska Public Power and Irrigation District v. Walston*, 140 Neb. 190, 299 N. W. 609: "Notwithstanding the prayer for relief is a part of the petition, it is no portion of the statement of facts which are required to constitute a cause of action, and the entire omission of any demand for judgment would not subject the petition to a general demurrer." However, an examination of the allegations of fact contained within the third amended petition of the appellants discloses sufficient facts upon which to base either an action for rescission or for specific performance. One cannot both rescind a contract and ask for its enforcement at the same time for the two are opposite types of relief and inconsistent and repugnant. 1 Am. Jur. 469, sec. 83; 1 C. J. S. 1231, sec. 79. Al-

though there are exceptions to this rule as where the nature of the relief will be precisely the same in each case, *Williams v. Lowe*, 4 Neb. 382, or where the petition shows the pleader is in ignorance of the facts he may plead in the alternative, 21 C. J. 406, sec. 426, but neither of these situations are applicable here for the relief would not be the same and the facts are fully pleaded and known to the appellants. However, the primary purpose of the action was for the partition of real estate. While the question of title was drawn in issue, the action should not have been dismissed but the question of title and the interests of parties should have been first determined, for as stated in *Phillips v. Dorris*, 56 Neb. 293, 76 N. W. 555: "The parties made defendants to Miller's action in the district court denied his title to the real estate in controversy and set up title in themselves. This did not oust the district court of jurisdiction to hear and determine the partition suit nor make the dismissal of that suit necessary. The court was one of general jurisdiction, administering both legal and equitable remedies, and was invested with authority in that proceeding to try the issues as to the title, and, after they were determined, proceed to partition the estate among the parties found to be the owners thereof. (*Wilkin v. Wilkin*, 1 Johns. Ch. (N. Y.) 110; *Lynch v. Lynch*, 18 Neb. 586; *Seymour v. Ricketts*, 21 Neb. 240.)" And the determination of title is a final order and appealable. *Sewall v. Whiton*, 85 Neb. 478, 123 N. W. 1042; *Peterson v. Damoude*, 95 Neb. 469, 145 N. W. 847. The question of title being drawn in issue, the action for partition should not have been dismissed but should have remained pending while the question of title was determined and before the question of title is litigated upon proper application the appellants should be required to elect whether they will stand upon rescission or specific performance.

The next question for consideration is whether or not there is a misjoinder of causes of action because the action may or may not contain two tracts of land in which all of the appellants may or may not have an interest. The cor-

rect rules are announced in *Shoup v. Cummins*, 65 A. L. R. 887, 890 (334 Ill. 539, 166 N. E. 118) : "A cause of action for partition of one tract of land is improperly joined in a single bill with a cause of action for a partition of another tract, where some of the persons interested in one are not interested in the other and do not derive their interests from a cotenancy of both tracts," except, "that partition of two or more parcels of real estate may be made in one proceeding if the title to all the parcels sought to be partitioned is derived from a cotenancy as a common source of title, though some of the cotenants, parties to the proceeding for partition, may be interested in only one or some of the parcels and not in all." And in 40 Am. Jur. 29, sec. 35 : "There is no question as to the right of a tenant in common to the partition of different tracts of land in the same proceeding, where the tracts are held by him in common with the same persons." See, also, 47 C. J. 333, sec. 156. Under these holdings this question is premature for until the question of title has been determined the question of whether or not there is a misjoinder of causes of action in the partition action cannot be properly passed on.

What has been said in regard to the question of a misjoinder of several tracts of land is likewise true with reference to the misjoinder of parties plaintiff, for whether or not Lawrence Santo and the other appellants have any interest in and to any part or all of the tracts of land sought to be partitioned can only be determined after the question of title has been passed on. Generally, "All persons, however numerous, materially interested in the event of the suit or in the subject-matter, should be made parties either as plaintiffs or defendants, so that the decree may finally and completely determine the rights which all persons have in the subject-matter decided, that the parties may safely obey and act on the decree, and a multiplicity of suits may be avoided." 30 C. J. S. 564, sec. 133. And "In proceedings for partition, whether at law or in equity, all of the cotenants are indispensable parties, and such of them as do not join as plaintiffs must be made defendants. The rule ap-

plies with equal force where the object of the suit is to obtain other relief in addition to partition, as for instance, where the suit is for partition and an accounting, or where, in addition to partition, cancellation of a deed of the premises sought to be partitioned is asked." 47 C. J. 365, sec. 231. And what has been said of cotenants is likewise true of their successors in title.

What has been said of the misjoinder of parties plaintiff is applicable to the defendants with the further provision that section 20-2172, Comp. St. 1929, provides: "Creditors having a specific lien or general lien upon all or any portion of the property may or may not be made parties, at the option of the plaintiff," and section 20-21,110, Comp. St. 1929, provides: "Persons having contingent interests in such property may be made parties to the proceedings, and the proceeds of the property so situated (or the property itself, in case of partition) shall be subject to the order of the court until the right becomes fully vested." If, in either the partition action or in the litigation affecting the title, a plaintiff or a defendant is a necessary or proper party for any purpose, he is properly joined in the action.

The same may also be said in regard to the question as to the allegations of the assets of the estate of the deceased, Charles J. Santo, being sufficient to permit partition before the estate has been closed. The petition shows the amount of the claims, that time for filing has passed, and also the personal property of which the estate is possessed. As stated in *Alexander v. Alexander*, 26 Neb. 68, 41 N. W. 1065: "An heir or devisee of an estate cannot maintain an action for distribution or partition until the debts, allowances, and expenses against said estate, have been paid or provided for, unless he give a bond with approved sureties to pay the same." But as held in *Schick v. Whitcomb*, 68 Neb. 784, 94 N. W. 1023, where the allegations of the petition allege the solvency of the estate, as well as the sufficiency of the personal assets to pay the debts against it and this is conclusively established by the evidence, then partition may be had. There being no allegation that a bond has

been given, the question of the sufficiency of the assets of the estate is one of fact to be determined by the court upon the evidence submitted at the time of hearing on the partition.

It is therefore the opinion of the court that the action be reversed with directions to the lower court to first determine the title of the parties in and to the premises, during which time the partition action is to remain pending, and upon the determination thereof, when the same becomes final, that the partition action be heard.

REVERSED.