GLADYS PAULINE STERNER ET AL., APPELLANTS, V.
LEATHA NELSON, SUCCESSOR PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MARY VIOLA ROSE, ET AL., APPELLEES.

314 N.W.2d 263

Filed January 8, 1982. No. 43528.

Rodney J. Palmer and William F. Davis for appellants.

Truman Clare and Timothy J. Cuddigan of Marks, Clare, Hopkins, Rauth & Cuddigan and Richard Hoch of Hoch & Steinheider for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The instant case involves the construction of the last will and testament of Oscar Wurtele, deceased. The appellants appeal from a summary judgment entered

by the District Court for Otoe County, Nebraska, finding that the nature of the devise and bequest made by Oscar Wurtele to his wife, Mary Viola Wurtele, by his last will and testament was a fee simple absolute. We believe the trial court was correct and affirm the judgment.

As noted, the appeal herein arises out of the last will and testament of Oscar Wurtele, executed on August 4, 1939. While the will is simple and to the point, it is not a model for estate planners. It reads in total as follows:

"I, the undersigned, Oscar Wurtele do hereby make, publish and declare the following as and for my Last Will and Testament:

"I hereby give, devise and bequeath all of my property of every kind and nature to my wife Mary Viola Wurtele to be her property *absolutely with full power in her to make such disposition of said property as she may desire;* conditioned, however, that if any of said property is remaining upon the death of said Mary Viola Wurtele, or in the event that she predeceases me then and in such event such of said property as remains shall vest in my foster daughter Gladys Pauline Sterner and her children.

"I hereby nominate and appoint my said wife, Mary Viola Wurtele, of Nebraska City, Nebraska, as executrix of this My Last Will and Testament.

"Dated at Nebraska City, Nebraska, this 4th day of August, 1939. Oscar Wurtele." (Emphasis supplied.)

Following Oscar Wurtele's death in 1955 his will was admitted to probate in the county court of Otoe County, Nebraska, and all of the property which Oscar Wurtele owned at the time of his death was devised and bequeathed to his wife, Mary Viola Wurtele, to be hers absolutely. Certain of the property, including two commercial buildings, a farm, and a residence, were held in joint tenancy and passed to Mary Viola Wurtele by action of law and are not in any manner involved in this case. Two other commercial buildings, however,

did pass to Mary Viola Wurtele by reason of the will of her husband, Oscar Wurtele, as well as certain personal property having an estimated value of $19,000. Mary Viola Wurtele thereafter married one Aaron Rose with whom she lived until her death on March 7, 1978. Mary Viola Rose died testate leaving her property to various individuals, including her husband, Aaron, and certain other nieces and nephews, but leaving no property to the appellants herein who are the foster daughter and her children referred to in the last will and testament of Oscar Wurtele. Aaron Rose died on June 24, 1979.

The evidence further discloses that in 1963 Mary Viola Rose sold the four commercial buildings for a total sale price of $70,000. No division of the sale price was made between the joint tenancy property and the property received under the will of her former husband. It is, however, clear from the evidence that none of the original property devised and bequeathed to Mary Viola Wurtele remained at the time of her death, though she did die owning property, some of which may have been purchased from the proceeds of either the personal property or the sale of the real estate. Following a hearing, the trial court found that the will of Oscar Wurtele devised and bequeathed all of his property to his wife, Mary Viola Wurtele, in fee simple absolute, and granted the personal representative's motion for summary judgment. The trial court's opinion provides in part as follows: "The Court is of the opinion that the language in the Oscar Wurtele will is so precise as to create a fee simple title in the wife, Mary Viola Wurtele."

Appellants have raised a number of errors, but the principal issue which needs to be addressed is whether the devise and bequest by Oscar Wurtele to Mary Viola Wurtele was a fee simple absolute or merely a life estate with authority to dispose of so much of the property as she chose during her lifetime. For, obviously, if we conclude, as the trial court did, that the

devise and bequest was a fee simple absolute, then Mary Viola Rose was entitled to do whatever she wished with her property, both during her lifetime and upon her death, and Gladys Pauline Sterner and her children would not be entitled to any portions of the property remaining at the death of Mary Viola Rose. While the issue as so stated is clear, the decisions of our court concerning this matter are not so clear. It is appropriate that we examine this question in order to resolve the dispute.

The general and majority rule is as expressed in 28 Am. Jur. 2d *Estates* § 94 at 198-99 (1966), wherein it provides in part: "It is a well-settled, general rule that where there is a grant, devise, or bequest to one in general terms only, expressing neither fee nor life estate, and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the grant, devise, or bequest to the first taker is construed to pass a fee. The attempted limitation over, following a gift which is in fee with full power of disposition and alienation, is void. Most of the cases arriving at this conclusion are based upon the reasoning that the well-settled rule that a general or indefinite grant or gift, coupled with an absolute or unlimited power or disposition, passes a fee applies with full force and effect even though the will purports to make a gift over of whatever may remain at the death of the grantee or devisee, the purported gift over merely being an invalid repugnancy."

The American Jurisprudence annotation cited above then goes on to note that the general rule is consistently applied even in cases involving wills of slightly different but substantial tenor, a number of which are similar to the language of the Wurtele will.

One may likewise find cases in Nebraska and other jurisdictions to support the general view expressed in the American Jurisprudence citation. In the case of

*Moffitt v. Williams*, 116 Neb. 785, 788, 219 N.W. 138, 139 (1928), we said: "'It has been regarded by the courts that it is impossible to convey an absolute title to real estate in fee simple by deed or will, and at the same time in the same instrument convey to the same person a limited right or title in the same land. It therefore follows that when there was an attempt to do so, and no other disposition of the land was made in the will, the courts, on the theory that real estate must have an owner, rejected the attempt to convey the limited title, and treated the conveyance as of a fee simple title.'

". . . 'The settled rule of law is that, if a deed or will conveys an absolute title in fee simple, an inconsistent clause in the instrument attempting merely to limit that title or convey to the same person a limited title in the same land will be disregarded.'"

Cases may likewise be found in a majority of the jurisdictions which support the general rule. In the case of *Moran v. Moran*, 143 Mich. 322, 323, 106 N.W. 206 (1906), the Michigan Supreme Court was presented a will which provided in part as follows: "'I give and bequeath to my beloved wife . . . all my property real and personal, of every name, nature and description to be hers absolutely, providing however, that if at her death any of the said property be still hers, then the residue still hers shall go to my, not her, nearest heir or heirs.'" The court held that such language created a fee simple absolute in the wife and the provision for the property remaining was void and unenforceable.

In *Hicks v. Fairbanks' Heirs*, 208 Okla. 346, 347, 256 P.2d 169, 169-70 (1953), the Oklahoma Supreme Court was presented a will which provided in part: "'. . . I give, devise and bequeath unto my beloved wife, Ada Fairbanks all of my estate real and personal and mixed to have and to hold to her and her heirs forever.

"'. . . [S]hould any of my estate remain at the death of my said wife Ada Fairbanks undisposed of then in that

event I give and bequeath such remainder to my nephew . . . . This provision is not intended to restrain or hamper my said [wife] . . . . . in any manner . . she is to have my entire estate as above provided—and this provision is only to take effect in case any of my estate remains undisposed of at the death of my said wife Ada Fairbanks.' "

The Supreme Court held that since the widow had been given an absolute power of disposition, she had taken a fee simple title and there was nothing remaining to be taken by the nephew. In so holding the Oklahoma court in *Hicks v. Fairbanks' Heirs, supra* at 350, 256 P.2d at 172, said: " 'It is a well-settled rule, firmly supported by a great numerical preponderance of the authorities, that where there is a devise or bequest to one in general terms only, expressing neither fee nor life estate, and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the devise or bequest to the first taker is construed to pass a fee. . .' "

In *Langston v. Hunt, Adm'r*, 269 Ark. 328, 329, 601 S.W.2d 833, 834 (1980), the Arkansas court was presented with a will which provided in part: " 'I give to my beloved wife, Ethel Deliah Jones, all of my property, both real and personal, of every kind and character, wherever situated. . . . At the death of my said wife . . . I desire that all of my property of which she dies seized of shall be divided among her nearest relatives and my nearest relatives, share and share alike.' "

Notwithstanding the language of the will, the court held that the devise was of a fee simple and that the remainder over to the heirs was unenforceable. In doing so the Arkansas court said in *Langston v. Hunt, Adm'r, supra* at 330, 601 S.W.2d at 834: "The present rule simply stated is that a testator cannot give an estate in fee simple by clear and concise language

and subsequently diminish or destroy the devise by use of other language. In other words, once the fee is given to a person or class of persons or other devisee, it cannot be thereafter taken away or diminished unless the terms are clear, unequivocal, and demonstrate the intent to limit the prior devise."

To a similar effect see *Hendrix v. Hester*, 385 So. 2d 990 (Ala. 1980); *Quickel v. Quickel*, 261 N.C. 696, 136 S.E.2d 52 (1964); *Virginia National Bank v. United States*, 307 F. Supp. 1146 (E.D. Va. 1969), *aff'd* 443 F.2d 1030 (4th Cir. 1971); *Jackson v. Ku Klux Klan*, 231 Ky. 370, 21 S.W.2d 477 (1929); *Shaw v. Wertz*, 369 S.W.2d 215 (Mo. 1963); *Rawlings v. Briscoe*, 214 Va. 44, 197 S.E.2d 211 (1973).

While this might at first blush seem to make the disposition of this matter relatively easy, unfortunately there are cases to be found in Nebraska which appear to hold to the contrary. The principal case is *Merrill v. Pardun*, 125 Neb. 701, 251 N.W. 834 (1933). In *Merrill, supra* at 703, 251 N.W. at 835, the testator's will provided in part as follows: " 'I give and bequeath to my wife, Maggie Brown, all the rest, residue and remainder of my property of whatever kind and wherever situated to be hers absolutely. It is my request, however, that any of said property remaining on the death of my said wife, shall go to my daughter, Mildred I. Merrill, to be hers absolutely and in case of her prior death then to her children, share and share alike.' " This court held that the conveyance was simply a life estate with the power to dispose during one's lifetime. In so holding, we said in *Merrill* at 706, 251 N.W. at 836: "The general rule under the common law is that, where an estate in fee simple is given in one clause of a will, subsequent clauses attempting to cut down said estate would be void; but in Nebraska, on account of the *peculiar provisions* of our statute regarding the intentions of the testator, in construing a will it is held that, where a will in one clause makes an apparently absolute bequest of

property, but in a subsequent clause makes a further bequest of the remainder after the death of the legatee taking under the first clause, the two clauses are to be construed and considered together to ascertain the true character of the estate in fact granted by the first clause; and in such case, contrary to the ancient rule at common law, the second clause is effective and operative to define and limit the estate granted by the first to and as a life estate with power of disposition, and the second is effective and operative to grant an estate in remainder in the unused, unexpended or undisposed property granted for life by the first." (Emphasis supplied.) As support for such position the *Merrill* case cites the cases of *In re Estate of Darr*, 114 Neb. 116, 206 N.W. 2 (1925); *Krause v. Krause*, 113 Neb. 22, 201 N.W. 670 (1924); *Heyer v. Heyer*, 110 Neb. 784, 195 N.W. 109 (1923); and *Grant v. Hover*, 103 Neb. 730, 174 N.W. 317 (1919).

However, neither the rationale of the *Merrill* case nor the earlier decisions seems to justify abandoning the general common-law majority rule for what appears to have developed as the Nebraska rule.

In the first instance the *Merrill* decision maintains that we are *compelled* to reach a separate decision because of the "peculiar provisions of our statute regarding the intentions of the testator." The peculiar provisions apparently refer to what was then cited as Comp. Stat. § 76-109 (1929), and which is now Neb. Rev. Stat. § 76-205 (Reissue 1976). It reads: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent [interest] of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." While the *Merrill* opinion suggests that that statute creates some "peculiar" rule of law, in fact it merely codifies what has always been the common-law

rule in both this jurisdiction and in others as well. See, *Krause v. Krause, supra; Grant v. Hover, supra; Herter v. Herter*, 97 Neb. 260, 149 N.W. 795 (1914); *Keck v. McKinstry*, 206 Iowa 1121, 221 N.W. 851 (1928); *Thurber v. Battey*, 105 Mich. 718, 63 N.W. 995 (1895); *In re Moran's Will*, 118 Wis. 177, 96 N.W. 367 (1903).

The most important aspect of both the statute and the common law was seemingly ignored by the court in *Merrill v. Pardun*, 125 Neb. 701, 251 N.W.2d 834 (1933). Both the statute, § 76-205, and the common law provide that in attempting to ascertain the true intent of the testator you cannot ignore the rules of law applicable to a situation. A testator may intend to violate the rule against perpetuities in his will. The statute, nevertheless, cannot permit such action even if the testator's intent to that effect is absolute and clear.

In *Andrews v. Hall*, 156 Neb. 817, 819-21, 58 N.W.2d 201, 202-03 (1953), we said: "The intent of the testator is clear in the present case. He gave a life estate to his widow and the remainder in fee simple to his children, share and share alike. It is clear, also, that testator intended to restrict the alienation of the vested remainders he had devised to his children. The question is whether or not his plainly expressed intent against alienation can properly be given effect under controlling rules of law.

". . . We reiterate, however, that this intent statute does not have the effect of changing substantive law and is, in fact, declaratory of a rule of construction long adopted by the courts. We have held that it relates only to rules of construction and does not enlarge or limit, or in any way modify, any rule of substantive law that existed at the time of its passage or that thereafter has been created. Stuehm v. Mikulski, 139 Neb. 374, 297 N.W. 595, 137 A.L.R. 327; Majerus v. Santo, 143 Neb. 774, 10 N.W.2d 608. . . .

"The children of the testator were devised a fee simple title to the remainder. It was alienable and devisable by the remaindermen, unless the restriction

in question prevents. The will of the testator was effective at the death of the testator and it devised the entire interest of the testator to his wife and children. It is the general rule that a grant or devise of real estate to a designated person in fee simple, with provisions therein that are inconsistent or repugnant thereto such as a restriction against the power to sell, mortgage, or otherwise encumber, conveys an absolute fee and such restrictions are void. Watson v. Dalton, on rehearing, 146 Neb. 86, 20 N.W.2d 610; State Bank of Jansen v. Thiessen, 137 Neb. 426, 289 N.W. 791. One of the primary incidents of ownership of property in fee simple is the right to convey or encumber it. It is the general rule that a testator may not create a fee simple estate to vest at his death and at the same time restrict alienation thereof. Restatement, Property, § 406, subd. e, p. 2397.

. . . .
"We do not say that a testator may not create a vested fee simple estate subject to a condition subsequent, or a determinable or defeasible fee. What we do say is that a restriction against alienation of a vested fee simple estate is not any one of these, nor, since it is void, can it be used as the sole basis for the creation of any of these estates. A restraint on alienation in the form of a condition subsequent, forfeiting or terminating the fee simple estate, or providing for a limitation over upon breach of the condition, is void. 41 Am. Jur., Perpetuities and Restraints on Alienation, § 70, p. 111; 31 C.J.S., Estates, § 8, p. 20. The right of alienation is inherent in the vested fee simple estate and it arises by virtue of the fact that such an estate is created." See, also, *State Bank of Jansen v. Thiessen,* 137 Neb. 426, 289 N.W. 791 (1940).

In the instant case it is not possible to reconcile the devise given by Oscar Wurtele to his wife, on the one hand, and the expression of desire concerning his foster daughter, on the other.

The grant to Mary Viola Wurtele was clear and

unambiguous. She was to have the property to "be her property absolutely with full power in her to make such disposition of said property as she may desire." That intent is clear. By having the property as hers "absolutely" and with "full power" to "dispose" of the property as she may desire, she had not only the right to sell or give away the property during her lifetime but the right to will the property upon her death as well. Anything less would not have granted her the property "absolutely" with "full power in her to make such disposition" as she desired. The authority given was not limited to sale or disposition during her lifetime, but rather was to be *absolute*.

The definition of absolute is "3: marked by freedom from restraint or control by any governing or commanding agent or instrumentality . . . 8: free from qualification . . . ." Webster's Third New International Dictionary, Unabridged (1966).

An absolute title estate or property is a fee simple estate; it is an estate without end or limitations and the largest estate a person can possibly have. See, *Long v. Kyte*, 340 S.W.2d 623 (Mo. 1960); *Middleton v. Dudding*, 183 S.W. 443 (Mo. 1916).

Yet, a life tenant cannot dispose of property by will, and the sale of the property often does not constitute a "disposition" but only a change in form. See, 51 Am. Jur. 2d *Life Tenants and Remaindermen* § 64 (1970); Annot., 27 A.L.R. 1381 (1923); Annot., 47 A.L.R.3d 1078 (1973).

No reason is given to us nor are we able to find any on our own as to why the majority rule following the common law should not be the rule in this jurisdiction. Certainly the reason suggested by the court in the *Merrill* decision, to wit, the particular nature of our statute, is not very persuasive. If the testator does not desire for the devisee to have a fee simple, it is easy enough to say so. But having once granted the devise or bequest in language which standing alone constitutes an absolute conveyance, the balance of the limitations

should be disregarded, regardless of the intent of the testator, on the basis that the intent is in conflict with the first grant. Either a devisee has received the property absolutely or the devisee has not received the property absolutely. Like honesty, morality, and pregnancy, an absolute devise cannot be qualified.

To be sure, a testator can give less than absolute grant, as was done in the case of *Annable v. Ricedorff*, 140 Neb. 93, 95, 299 N.W. 373, 375 (1941), where the testator provided his property to his wife "'to her own use and benefit forever; and it is my desire and wish that after her death, that all the property remaining'" go to his children. In such a case it can be argued that only a life estate was granted to the wife for her use and benefit during her lifetime. But where, as here, the devise is "absolute," we can reach no other conclusion but that the grant was a fee simple. As such, it is without qualification regardless of what the testator may intend.

We, therefore, now adopt the majority rule to the effect that where there is a grant, devise, or bequest to one in general terms only, expressing neither fee nor life estate, and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the grant, devise, or bequest to the first taker is construed to pass a fee. The attempted limitation over, following a gift which is in fee with full power of disposition and alienation, is void. To the extent that our previous decision in *Merrill* and cases of similar import are to the contrary, they are overruled.

Having thus concluded that the trial court was correct in ruling that the devise and bequest by Oscar Wurtele to his wife, Mary Viola Wurtele, was as a matter of law a fee simple absolute, there remained no question of fact to be resolved and the trial court was correct in granting summary judgment. See, *McGreevy v. Bremers*, 205 Neb. 554, 288 N.W.2d 490

(1980); *Blome v. Hottell*, 200 Neb. 528, 264 N.W.2d 424 (1978); Neb. Rev. Stat. § 25-1332 (Reissue 1979). The judgment of the trial court, therefore, is affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting.

We have said many times that the cardinal rule in the construction of wills is to ascertain the intention of the testator. Since 1866, by statute, it has been the duty of the courts of this state to carry into effect the true intent of the parties in the construction of any instrument creating or conveying an interest in real estate. Neb. Rev. Stat. § 76-205 (Reissue 1976). The majority opinion ignores these rules by reverting to a method of decision which defeats the intention of the testator.

In this case it is clear from the language of the will that the testator intended his wife to have the use of the property with full power of disposition *during her lifetime*, but upon her death any property remaining should go to his foster daughter and her children. In previous cases we have described the estate devised to the wife under such a will as a life estate with power of disposition. *Merrill v. Pardun*, 125 Neb. 701, 251 N.W. 834 (1933).

By giving effect to only a part of the language of the will, the majority opinion declares the will devised an estate in fee simple to the wife. By this process of magic words and bootstrapping, the remaining language of the devise is declared to be of no legal effect.

I respectfully dissent.

CLINTON, J., joins in this dissent.