John Hilliard Peters, appellant, v. Northwestern Mutual Life Insurance Company et al., appellees.

Filed December 10, 1929. No. 26843.

*Thomas E. Conley, Hasselquist & Chew* and *Adolph Wenke,* for appellant.

*Foster & Anderson, Charles H. Kelsey* and *Fay H. Pollock, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Thompson, and Day, JJ., and Thomsen, District Judge.

GOSS, J.

John Hilliard Peters appealed from the judgment of the trial court, refusing to quiet in him the title to 200 acres of land in Stanton county, and quieting the title in the appellee, William F. Schulz, subject to a mortgage in favor of appellee, Northwestern Mutual Life Insurance Company, decreed to be a first lien.

The land came to Peters in 1915 through the duly probated will of his father, John Peters, who died seised of considerable land, and who provided in his will for his widow, his two daughters, and his four sons. Appellant's arguments are concerned chiefly with a portion of the eighth paragraph of the will, which devised the 200 described acres of land to appellant, subject to certain payments to the widow and subject to the payment of his defined share of the indebtedness on another quarter section of land if the testator should not have paid that indebtedness. The payments are not the subject of controversy. The argument centers about two things: First, the legal effect of the following words contained in the eighth paragraph of the will—"I also direct that said land herein devised to my said son, John Hilliard Peters, shall not be sold, nor incumbered by trust deed, mortgage or otherwise prior to the year 1925;" and, second, the acts and conduct of the plaintiff after he was vested with title under the will.

For a better understanding of the issues, it is well to state here certain other facts fully pleaded and indicated in the evidence.

Appellant was probably born December 7, 1890. His father's will was executed October 28, 1914, and his father died in February, 1915. Appellant was then living on and farming the land in question and continued to live there until about March 1, 1922, when he moved to Omaha, where he has since worked as a traveling salesman. From his majority he did business with the Stanton National Bank, borrowing comparatively small sums of money. After he acquired the land under his father's will his borrowings greatly increased until, on October 30, 1920, he

owed the bank $35,467.98 on unsecured notes, some of which were then due and payable. On that date appellant and his wife, Kate Peters, entered into a written agreement, duly acknowledged, with Frank L. Sanders, acting for the bank and for the use and benefit of the Stanton National Bank, in consideration of the renewal of the notes, to execute a collateral promissory note for $36,000, together with a mortgage securing the same upon the real estate owned by John Hilliard Peters and Kate Peters. It was agreed therein that the collateral note and mortgage should be security for the said indebtedness and for payment of all interest accruing thereon; that Peters and wife warranted and guaranteed the title to the real estate and to cure at their own expense any defects in title to the premises mortgaged.

On the same day appellant executed and delivered to Frank L. Sanders the collateral note and mortgage for $36,000. It covered the 200 acres devised under the will and also an undivided one-half interest in 292.28 acres owned jointly by appellant and another. The latter tract was mortgaged expressly subject to two mortgages already existing thereon. The principal notes in favor of the bank were renewed in 1921. Appellant was unable to pay them.

On October 5, 1921, in order to aid in making effectual the warranty and guaranty as to the 200 acres, and also to convey the land to the bank through its nominee, appellant and his wife joined all the other heirs (and their respective spouses) of John Peters in a warranty deed to the 200 acres in favor of Andrew Spence. Mr. Spence had become the president of the Stanton National Bank in place of Frank L. Sanders and was acting for the bank. The land was taken over absolutely on the basis of $40,000 or $200 an acre. As a consideration for the settlement, the bank released its mortgage as to the 292.28 acres, paid $1,200 to third parties on account of a mortgage, took over appellant's $200 stock in a Hi-line Company, and assumed the taxes on the land. As a part of the transaction it surrendered the principal notes of appellant, and on October 11, 1921, canceled the collateral note and mort-

gage. Under the settlement appellant was to vacate the premises on March 1, 1922, and Spence was to take possession on that date. This was done.

While Spence held the title for the bank he mortgaged the land to the Northwestern Mutual Life Insurance Company, appellee herein, for $12,500. On March 16, 1923, Spence conveyed the land to the Stanton National Bank, and on March 1, 1925, the bank conveyed by warranty deed to William F. Schulz, appellee, who has ever since lived on the land with his wife and three children and who has made valuable improvements thereon. He paid the bank a consideration of $40,000, being $14,000 in first mortgages on Stanton county farm land, $13,500 in town property in Stanton, and $12,500 represented by the mortgage on the land.

The petition was filed March 31, 1927. The Stanton National Bank was not made a party. The Northwestern Mutual Life Insurance Company and William F. Schulz and wife were the only defendants named. Plaintiff sought to quiet title against them on the ground, in substance and effect, that he became the owner of the fee simple title through his father's will, and that the rights of the defendants were acquired prior to 1925, in violation of the terms of the will restricting alienation; that it was the intention of the testator to create a constructive spendthrift trust, and that the defendants, having notice of the restriction, acquired no interest in the land through the conveyances under which they claim.

The insurance company set up its mortgage, and the defendants Schulz set up their title by mesne conveyances from plaintiff through the bank and the officers of the bank acting for it, showing the history of the acts and representations of plaintiff in relation to the whole matter. They pleaded that, when Spence took a deed on behalf of the bank, plaintiff insisted that, notwithstanding the terms of his father's will, he had a fee simple title with the power of alienation, agreed to get all others who might have an interest in any reversion to convey, and agreed to warrant the title if they would take it and release him

from the debts owed the bank and assume the certain other obligations heretofore named. Relying thereon the bank canceled his debts, assumed the obligations, and accepted title buttressed by the warranties and conveyances from plaintiff and his wife and all the other heirs and their spouses; and the defendant Schulz made many improvements, at considerable expense, detailed in his pleadings, while the plaintiff stood by and waited until he became insolvent and could not make good his warranties and guaranties nor respond in personal damages, until his debts to the bank had become barred, and until more than two years after the first of the year 1925, before asserting the alleged infirmity of title. Wherefore they claim he is estopped by his conduct and barred by his laches from maintaining this suit.

It appears that, on March 12, 1927, plaintiff and wife, for an expressed consideration of $25,000, mortgaged the 200 acres to Thomas E. Conley and R. B. Hasselquist (who are his attorneys in the suit). This mortgage was filed March 31, 1927, the same day the petition was filed, but Conley and Hasselquist were not made parties. Somewhere along the line they were included as defendants, as they joined plaintiff in a pleading filed November 26, 1927, and their rights are adjudicated adversely to them in the decree entered October 12, 1928. Likewise, on March 26, 1927, plaintiff and wife mortgaged the 200 acres to Donald Matheson for $6,250. This was filed March 31, 1927, and he joined plaintiff and his attorneys in the pleading above referred to and was cut out by the decree. Conley, Hasselquist and Matheson have not appealed.

There is little, if any, dispute about the facts. The salient facts were rightly found by the trial court in favor of defendants. The result is dependent on matters of law. The issues of law arising out of the facts may be condensed as follows:

First. Appellant asserts and appellees dispute that the restraint of alienation of the fee as provided by the will is valid.

Second. Even if that restraint of alienation is held to

be valid according to its terms, yet appellees contend and appellant denies that the conduct of appellant was such that estoppel and his laches are a complete defense against his suit in equity.

Section 5594, Comp. St. 1922, requires that, in the construction of a will, it shall be our duty "to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law."

When the will was made in October, 1914, we do not find that there was anything in the evidence to indicate that the testator had so short an expectancy of life that it would end, as it did, in his death in February, 1915; nor do we find evidence that the plaintiff was a spendthrift and that his father intended to create a spendthrift trust. Plaintiff's later financial condition probably arose in his case, as it did in many others of the period, in the purchase of other lands and in the deflation of value of lands and of farm products. So the question of the intent and of the right of the testator to restrict alienation is unvexed by any facts other than those discoverable from the will itself.

Counsel have not pointed out, nor do we find a case in our own court, where a fee simple title with a restraint for a definite time, but ending within the life of the devisee, as in the case at bar, has been the subject of an opinion, though several of our cases have been discussed in the briefs as if they were definitely in point. In *Albin v. Parmele,* 70 Neb. 740, the will expressly provided, as to the devisee: "The intention being to give him a life estate therein without the power to sell or dispose of it." The remainder in fee was held to belong to the heirs of the devisee, as appeared from the full contents of the will, interpreted in the light of the intent statute. *Weller v. Noffsinger,* 57 Neb. 455, involved a trust estate which was to continue until the beneficiary should arrive at the age of 30. The beneficiary had not arrived at that age. The court held that the legal title was in the trustee and his creditors took no title by virtue of their execution. In *Hiles v. Benton,* 111 Neb. 557, the will, the intent of which

was there sought, expressly devised a "life use," and then said: "That there may be no mistake or misunderstanding as to my intention and purpose, I here state that it is my purpose and intention that my son, Harry Hiles, shall have the use of my real estate during his life, without power and authority to sell, mortgage, or to in any manner alienate said use for any purpose." It was held that the intent of the testator was to place the life use of the property beyond the reach of the creditors of the devisee of that life use. *Reuter v. Reuter,* 116 Neb. 428, involved a deed, conveying a life estate, with conditions against incumbrances, with a remainder in fee to a designated class.

However, there are, in some of the foregoing cases and in others in our court, many indications of the relaxation of ancient rules of construction of wills and deeds brought about by the statute requiring the intent of the testator or grantor to be followed when such intent is consistent with the rules of law.

One of the most recent cases expressing the governing principle compelled by section 5594, Comp. St. 1922, is *In re Estate of Combs,* 117 Neb. 257 (citing cases), in which we said: "No rule of law is better settled or more in accord with good sense than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, no conventional forms of expression, are necessary to make an effective testamentary disposition of his property. The court, without much regard to the canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it."

There is no doubt that the ancient rule against restrictions of alienation of a fee simple title has been much relaxed by the modern trend of interpretation of wills and deeds; and, under a statute such as ours, the intent of the testator is the imperative guide unless inconsistent with the rules of law. In *Hiles v. Benton,* 111 Neb. 557, Judge Redick is quoted with approval as saying: "It occurs to me that the rule of law here spoken of does not include

legal rules of construction in conflict with the very rule of construction sought to be established by the statute, for this would be a *felo de se.*"

In *Libby v. Clark,* 118 U. S. 250, an ejectment action from Kansas, Libby claimed under a patent issued to Hurr, an Ottawa Indian, granting him and his heirs 320 acres of land duly allotted to him as an Indian of the Ottawa tribe, pursuant to the terms of a treaty ratified July 28, 1862. The treaty provided that no Indian grantee should alienate or incumber the land allotted to him until he should, by the terms of the treaty, become a citizen of the United States, and further provided that such allottees should become citizens five years after the ratification. The deed from Hurr to Kallock, under which Libby claimed, was dated December 1, 1865. It was refused in evidence because more than two years of the period before Hurr could become a citizen under the treaty yet remained and there was no accompanying evidence that he was otherwise a citizen. On the point that the patent to Hurr conveyed a fee simple title with a restraint on alienation, Mr. Justice Miller, who wrote the opinion, said: "The title conveyed to Hurr by the patent was a *fee simple;* that is it was all the title or interest in the land. No one shared this title, or had any interest in it, and it descended, or would have descended, to his heirs. The restriction on his right to convey did not deprive the title of the character of a fee simple estate. * * * The limitation of the power of sale for five years is not inconsistent with a fee simple estate."

"A condition, that the grantee shall not alien to a particular individual, or for a limited time, or that he shall not use it for a specified purpose, or in a prescribed manner for a limited time, has always been held valid." *Cornelius v. Ivins,* 26 N. J. Law, 376, 385.

Such restraints upon alienation of a fee simple title "as are limited and reasonable in their application, and as to the time they must operate, are valid and will be upheld. 1 Washburn on Real Property, 67-69; 4 Kent Com. 135." *Munroe v. Hall,* 97 N. Car. 206.

A condition in a will, devising land to an infant, that it shall not be sold until he is 35 years of age, is not an unreasonable restraint of alienation and is valid. Many cases cited. *Wallace v. Smith,* 113 Ky. 263.

Other cases to the same effect: *Jauretche v. Proctor,* 48 Pa. St. 466; *Camp v. Cleary,* 76 Va. 140; *Langdon v. Ingram's Guardian,* 28 Ind. 360; *Andrews v. Spurlin,* 35 Ind. 262.

Each case of the interpretation of intent of a testator or grantor must be considered and determined in the light of its own facts. Taking into consideration the circumstances surrounding the testator, and giving active life and force to the statute on intent, we are of the opinion that, in this particular instance, the will devised to appellant a fee simple title to the 200 acres, with a lawful restraint upon his alienation thereof until the year 1925.

This leaves for consideration the question whether, when Peters brought this suit in equity, he was in a position to maintain such a suit. We have shown that he did not file his petition until March 31, 1927. He therefore did not commence the suit until two years and three months after the date of removal of the restriction of alienation imposed by his father's will. It was not until three months after the restriction had expired that appellee Schulz completed his deal and payment for the farm and went into possession. He continued in undisputed possession and ownership of the farm for two years before Peters asserted any right or title against him. In the meantime he had not only made valuable improvements, as heretofore stated, but the evidence shows that Peters had come to the place and asked permission to drive through one of the fields because the road was blocked by snow. He conversed with Schulz and his son about certain buildings on the farm, but neither then nor at any other time claimed any ownership of or interest in the place. Schulz had bought and paid for the place, had made improvements thereon and lived there for two years relying on the title. That title had come from appellant and was buttressed by deeds with covenants of warranty, not only from appellant, but from his brothers and sisters.

Full and complete consideration had been paid to appellant for the land. Appellant's only claim of justification for his position is that he was restrained by the terms of his father's will from conveying the land and that his deed made prior to 1925 was void. Was it void or was it, at the most, merely voidable?

Even, "Upon the breach or nonperformance of a condition annexed to the grant of a freehold estate, the title conveyed is not void, but is only voidable by the act of the grantor or his heir, who must take advantage of the condition and repossess himself of the estate by actual reentry, or by some act equivalent thereto and manifesting an intent to terminate the estate." 18 C. J. 381, sec. 442. And "Equity may relieve from forfeiture in case of breach of conditions in deeds, as in case of other penalties, and will adapt the relief to the nature of the case, but the granting of relief rests in the sound discretion of the court." 18 C. J. 381, sec. 440.

In the will there was no reversion expressed. There was no penalty provided. Appellant has proceeded on the theory that a reversion was implied in his favor and that his deed was void. But it would seem as if the deed was, at the most, voidable only, and that equity reserves to the court the usual discretion to dispense equity only to those who do equity.

"A provision in a deed of gift from father to son that the vendee shall not convey the property to any person other than the father's bodily heirs for the term of twenty years is a reasonable restriction upon alienation. A conveyance made in violation of such restriction is merely voidable and not void. Such forfeitures may not be exacted after the expiration of the restrictive period." *Francis v. Big Sandy Co.*, 171 Ky. 209.

To the same effect is *Price v. Virginia Iron, Coal & Coke Co.*, 171 Ky. 523. See, also, the learned discussion in *Kentland Coal & Coke Co. v. Keen*, 168 Ky. 836, holding that, where one has made a conveyance in violation of a restriction, that is, before the restrictive period has elapsed, and the right to proceed for a forfeiture is relied

on, "this right must be exercised during the time through which the prohibitive time is imposed by the condition, and if this right is not exercised by such person or persons within such time, the deed made in violation of the condition becomes absolute, as such deeds are voidable and not void."

We are of the opinion that the most appellant can claim as against his mortgage and contract of October 30, 1920, and as against his deed of October 5, 1921, is that, being made before the end of the restrictive period, they were merely voidable, and not void. They contained the usual covenants of warranty. If it had not been for the limited restraint upon alienation imposed by his father's will, any title that thereafter came to grantor would have inured to the benefit of his grantees under the well-known rule which needs no citation of authorities.

When he executed and delivered these instruments the appellant knew that the restraint was operative and he knew that it would so continue until the year 1925. He intended, as shown by his personal acts in taking the most ample consideration to himself and in securing the waiver by deeds of his coheirs and devisees of any reversion of title to them, to make finally effective as of January 1, 1925, his conveyance of title. Not having acted then on what he now claims was a continuing right of forfeiture after that date, he allowed the appellee Schulz to take over and pay a full and complete consideration for the land as of March 1, 1925, and more than two years thereafter he seeks to exact the forfeiture.

We think his position untenable. He asks equity but does not offer to do equity. We do not go to the length of some of the cases we have cited and say that his upset date within which he could maintain his suit would be the last day of the period of restraint. It may be that in such a case of restraint upon alienation there might be good reason to prevail upon action taken within the usual period of limitations. Each case must be determined in the light of its own circumstances. We are of the opinion that, in the particular circumstances of this case, the appellant, by

his mortgage, contract, deed and conduct, allowed the appellee Schulz to become placed in a situation where it would be inequitable to divest him of his title. It is unnecessary to repeat the facts which are so apparent. So long after the expiration of the period within which appellant might have asserted his lack of power but continued to waive action to assert it, equity will not lend its aid to restore him to a place of vantage and to displace therefrom one who would not have been there but for the acts and conduct of the appellant. Whether it be called estoppel or laches is immaterial. The important thing is that the facts and the law applicable thereto prevent the appellant from recovering as a matter of equity and good conscience.

The judgment of the district court is

AFFIRMED.