176 N.W.2d 29 (1970)
185 Neb. 358
Richard F. CAST, Appellee,
v.
The NATIONAL BANK OF COMMERCE TRUST AND SAVINGS ASSOCIATION OF LINCOLN, NEBRASKA, Executor, Trustee and Residuary Legatee and Devisee of the Last Will and Testament and Estate of William J. Webermeier, Deceased, Appellant.
No. 37212.
Supreme Court of Nebraska.
March 27, 1970.
*31 Samuel Van Pelt, Lincoln, for appellant.
*32 Robert T. Cattle, Jr., Seward, for appellee.
Heard before WHITE, C. J., and CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ.
SPENCER, Justice.
This is an action brought by Richard F. Cast against the executor and residuary trustee to construe the last will and testament of William J. Webermeier. The case was heard on the pleadings and a stipulation of facts. The trial court found for the plaintiff and the defendant perfected an appeal to this court.
The pertinent provisions of the will, which was executed August 4, 1966, are as follows: "II. I give, devise and bequeath to Richard Cast, if he survives me, The Northwest Quarter (NW¼), and the Northwest Quarter of the Northeast Quarter (NW¼, NE¼), of Section Fourteen (14), Township Eleven (11), North, Range Two (2) East, Seward County, Nebraska, together with all tangible personal property located thereon. If the said Richard Cast does not survive me, then I give, devise and bequeath the property described in this paragraph to such issue of Richard Cast as survive me.
"III. I give, devise and bequeath to Richard Cast, should he survive me, all right, title and interest which I shall die seized in and to the South Half (S½) of Section One (1), Township Nine (9) North, Range Two (2) East, Seward County, Nebraska, together with all tangible personal property located thereon, including, but not limited to all livestock, equipment, household goods and furnishings, all of which is subject to the following terms and conditions:
"A. The said Richard Cast or one of his children shall, within a period of one year after my death, move to and occupy said farm as his or her residence and domicile, and continuously maintain the same thereon for a period of twenty-five (25) years.
"B. The member of the Richard Cast family so occupying said real estate shall, within a period of one year after my death, by appropriate legal action, add the name `Webermeier' to his or her legal name.
"C. If any of the above conditions shall not be met during the period described in Paragraph IIIA, or should there be a subsequent violation of any of the said conditions during said period of time, title to said real estate shall revert to the residuary legatee specified in Paragraph VI of this will." (Italics supplied.)
At the date of his death on January 12, 1968, William J. Webermeier was the sole owner of the northwest quarter and the northwest quarter of the northeast quarter of Section 14, Township 11 North, Range 2 East, Seward County, Nebraska, but owned only an undivided one-half interest in the south half of Section 1, Township 9 North, Range 2 East, Seward County, Nebraska. He also died possessed of tangible personal property of a value in excess of $500,000. The other undivided one-half interest in the south half of Section 1 was owned by an incompetent sister of deceased, Ida Marie Cast, the mother of plaintiff. Plaintiff is the only child and the sole and only heir of said Ida Marie Cast, who at the time of the hearing herein was 74 years of age. At all times from and subsequent to October 15, 1930, Ida Marie Cast has been an incompetent person, and until his death was under the care and custody of William J. Webermeier, her brother and court-appointed guardian.
Plaintiff, who has been a resident of Amarillo, Texas, for the past 10 years, was 47 years of age at the time of the hearing, and the father of four children ranging in age from 8 to 21 years. He is a graduate geologist and for the past 7 years has been employed by a petroleum company in Amarillo in the capacity of district geologist. Because of his activities in his profession and in the Amarillo community, he has established himself professionally and *33 socially under the name of Richard F. Cast.
In his petition plaintiff informs the court that he accepts the devise and bequest of real estate and personalty under paragraph III, but that the terms and provisions of subparagraphs A, B, and C of said paragraph III are equivocal, ambiguous, vague, indefinite, uncertain, and inherently questionable as to legality under the laws of Nebraska, and that plaintiff will, upon construction thereof, accept and comply with such conditions and provisions as may be determined valid and controlling by the court.
Plaintiff contends that subparagraphs A, B, and C are void for one or more of the following reasons: (a) Testator was not the owner of the entire interest and title in the real estate, and could not impose requirements as to occupancy and use of said real estate contrary to the ownership and title of the other undivided one-half interest; (b) the exceptions are an attempted restraint as to alienation and use of the real estate, and are inconsistent and repugnant with the grant of a clear and unequivocal fee simple title in paragraph III; (c) said property is under the control of testator's personal representatives who prevent compliance with subparagraph A; (d) the requirement as to the addition of the name "Webermeier," if strictly construed as requiring its addition and use as a surname, applies equally to male and female children, and with respect to female children would be in restraint on third parties who are strangers to the gift and devise, and therefore against public policy; (e) the requirements are an attempt to condition the title upon the performance of third parties, the children of plaintiff, and are therefore unreasonable and unlawful restraints; (f) the purported reversion in subparagraph C is void as the alleged testamentary trust is void for want of a beneficiary; and (g) all of said restrictions are void as being unnatural, unreasonable, impossible of performance, contrary to public policy, and illegal restraints against alienation.
Plaintiff devotes 20 pages of his brief to an attack on the right of the defendant to prosecute an appeal herein. There is no merit in plaintiff's position and we do not deem it necessary to encumber this opinion with a discussion of those issues. Suffice it to say that plaintiff brought this action against the defendant not only as Executor but also as Trustee and Residuary Legatee and Devisee of the Last Will and Testament and Estate of William J. Webermeier, deceased. Before attempting to determine the exact nature of the estate created by the devise, we consider the legality of the conditions imposed.
A testator has a right to dispose of his property in any manner he sees fit and to attach any conditions to its possession and enjoyment, provided no positive rule of law or public policy is infringed, and it is the duty of the courts to enforce the will of the testator under this limitation in accordance with his intention, as expressed by the words used. See In re Estate of Smith, 117 Neb. 776, 223 N.W. 17.
The will herein uses words and language which clearly indicate the intent of the testator to condition the devise and bequest upon the conditions expressed. Do these conditions violate any positive rule of law or any public policy?
We consider first the condition that the member of plaintiff's family occupying the real estate in question add the name "Webermeier" to his or her own real name. The legality of a condition that a devise or bequest be dependent upon a change of name has previously been passed on by this court. Smith v. Smith, 64 Neb. 563, 90 N.W. 560, involved a condition that a devisee should be christened and baptized by a certain name and no other, and that he should maintain and be known by that name during his natural life. The evidence disclosed that he violated the condition. This court held the condition to be reasonable and enforceable and one that the testator could reasonably impose. It *34 divested the devisee of the estate which it determined had vested conditionally.
The validity of a requirement that the beneficiary must reside on certain premises is well established. See collection of citations at 35 A.L.R.2d II, s. 3, p. 391. A more serious contention is that testator was the owner of only an undivided one-half interest in the south half of Section 1, and consequently could not impose conditions involving the entire farm. The other one-half interest was owned by testator's incompetent sister who is the plaintiff's mother. The farm was the home place and was known as the "Webermeier" farm. Testator had controlled it for 37 years as a part owner and as the guardian for his incompetent sister.
Subparagraph A provides that plaintiff or one of his children occupy the farm as his or her residence for a period of 25 years. The trial court held this provision was an attempted condition subsequent which failed because it is an impossible condition, and that plaintiff received the title to the farm in fee simple absolute. There is no question it was beyond the testator's power to give exclusive occupancy to the entire farm for 25 years after his death. This could only be done with the cooperation and consent of the guardian of the incompetent and her heirs after her death. However, the will does not say this. What it says is that the plaintiff or a member of the plaintiff's family shall move on and occupy the farm as his or her residence and domicile continuously for a period of 25 years. Testator was a tenant in common, holding by the "`moiety or half and by the whole.'" 20 Am.Jur.2d, Cotenancy and Joint Ownership, s. 7, p. 98.
"A tenant in common has an interest in the possession of every part of the common property and has the right to occupy the whole of the property and every part thereof, but he is not entitled to exclusive possession of the whole or of any particular part, as against the other cotenants, except by agreement with them." 86 C.J.S. Tenancy in Common § 25, p. 383.
Here, the devise is to the only child and the sole and only heir of the incompetent cotenant. Obviously, the testator knew the situation. He knew that the devisee and his family were nonresidents of the State of Nebraska. He knew that he owned only an undivided one-half interest, and that the devisee was the sole and only heir of the incompetent cotenant. Whatever his motive, and there could have been several, his intent is not ambiguous or obscure. It is apparent that he was attempting to perpetuate the Webermeier name and to keep the occupation and possession of the property in the Webermeier line for a period of 25 years subsequent to his death. It is also apparent that if the conditions were not met, he wanted the property to vest in the residuary devisee for the benefit of the "William Webermeier Scholarship Fund Trust."
The provisions and conditions of a will are to be construed by the courts with a view of carrying out the intention of the testator. The basic object of will construction is to ascertain the intent and purpose of the testator as shown by the will, and then to give that intention effect if not contrary to law. National Bank of Commerce Trust & Savings Assn. v. Crowell Memorial Home, 181 Neb. 341, 148 N.W.2d 304. The intention which must be given effect is the intention which the testator expressed by the language employed in his will. In re Estate of Zents, 148 Neb. 104, 26 N.W.2d 793.
The trial court held that testator's dominant intent was to give his interest in the farm to his closest competent relative, his nephew. With this we cannot agree. The intention of the testator is not to be ascertained by subtle rules of construction or obscure legal principles and technicalities, but by the ordinary meaning of the language employed by the testator in his will. When we compare the outright bequest *35 made to the nephew in paragraph II with the explicitly conditioned bequest in paragraph III, can we say testator intended that a fee simple title would ever vest in the nephew without restriction? It is of interest to note that in paragraph II there is a provision for his issue in event of the death of the plaintiff. There is none in paragraph III. It is much more reasonable to conclude that testator's dominant intent was to force compliance with the conditions if the nephew was to have his interest in the land. The dominant intent was to bring a member of the family back to the farm and to perpetuate the family name, and that if either condition failed, the devise over was to be effective. This is the intent inherent in the words, "* * * all of which is subject to the following terms and conditions: * * *." To hold otherwise is to defeat the intent of the testator.
The size of testator's estate and the list of his securities in the record indicate that he was a man of at least average intelligence. He had been the guardian of his sister, the plaintiff's mother, for 37 years and would be thoroughly familiar with her finances as well as with the problems inherent in the divided title. The fact that no provision was made in the will for the incompetent would indicate she had no financial problems. The conditional devise was made to the only person who might be in a position to influence the new guardian relative to the occupancy and possession of the farm. It is no strained construction to find that among other reasons testator was attempting to avoid a partition and sale by returning at least one member of the plaintiff's family to the farm for a period of 25 years.
The devise in paragraph III, as a part thereof, includes the words: "* * * all of which is subject to the following terms and conditions." We have said that a devise which conveys property in fee simple to which conditions are attached and in violation of which forfeiture may be declared by contingent devisees, creates an estate in fee simple subject to conditions subsequent. See, Ohm v. Clear Creek Drainage Dist., 153 Neb. 428, 45 N.W.2d 117; Watson v. Dalton, 146 Neb. 78, 18 N.W.2d 658, 20 N.W.2d 610.
There is a suggestion that we are dealing here with conditions precedent as well as subsequent. Conditions precedent are those which must take place before an estate can vest or be enlarged; and if land is conveyed or devised on a condition precedent the title will not pass until the condition is performed. Conditions subsequent are those which in terms operate on the estate conveyed or devised and render it liable to be defeated for breach of condition. 28 Am.Jur.2d, Estates, s. 132, p. 246.
The devise is more in the nature of a conditional limitation than a condition subsequent. 2 Washburn on Real Property (6th Ed.), s. 1640, p. 582, speaking of the rules applicable to conditional limitations and the distinction between them and contingent remainders in one class of cases and conditions of common law in another, says this distinction: "* * * is often exceedingly nice, and yet very important in its consequences. As an illustration, if an estate is limited to A until B return from Rome, and after B return to C, the limitation is a contingent remainder, and good as such. But if the estate had been limited to A, which would be for life if no words of inheritance were annexed, provided that if B return from Rome the estate should go to C, the limitation, though precisely the same in effect as the first, would be, not a remainder, but a conditional limitation. In the one case, if C's estate comes into effect at all, it is after the prior estate had determined by the natural expiration of the time for which it was limited; whereas, in the other, C's estate, if it took effect, came in and displaced the prior estate before its natural termination, and took its place as a substitute therefor. Then, again, though the estate of A is a conditional one, liable to be defeated by the happening of a contingent *36 event, it is not a case of condition at the common law, where to determine an estate for a breach of it required an entry by the grantor or his heirs, who thereby regained the estate originally parted with; but it is a case where the estate is wholly parted with by the grantor, no interest being left in him, and passes at once, upon the happening of the event, to him to whom it is limited. That contingent event, when it happens, is the limitation of the first estate granted; and the estate, instead of going back to the original grantor, goes over, eo instanti, and without any act but that of the law, to the party named in the very gift itself of the estate, as the one to take it in that event. In case of a condition at common law, if the estate granted is defeated by the happening of the event, and the re-entry by the grantor, it is restored to or revests in the grantor as of his original estate. If it determines by its original limitation, or the natural expiration of the estate as first granted, it reverts at once, and without any act on his part, to the grantor. If it determines by being defeated by the contingent event before its natural expiration, it goes in the case above supposed to the second party, or grantee, in the nature of a remainder, technically constituting, as above stated, a conditional limitation."
We have here what is referred to as a determinable, qualified, or base fee, because the property passes over to a third party upon defeasance rather than reverting to the grantor and his heirs, as is the situation with a true condition subsequent. See 28 Am.Jur.2d, Estates, s. 22, p. 99, and note 4, s. 139, p. 253. The devise over to the residuary devisee is an executory interest, or an estate created in a third person upon the defeasance of the prior estate in the same property. It lies within the general class of future estates which may be created in some person other than the transferor. 28 Am.Jur.2d, Estates, s. 333, p. 538.
Plaintiff is required to take affirmative actionmove on the land and change nameand unless that action is taken within the time limited, there is a devise over. It is obvious, therefore, that the testator intended to create an estate upon a special or conditional limitation, and did not intend the estate to permanently vest unless the plaintiff took the affirmative action. Time for compliance was necessary and the time limited, 1 year, was well within the time necessary to probate the will and to administer an estate of this size. The words used are words of limitation rather than condition because they circumscribe the continuance of the estate and mark the period which is to determine it.
It is not material here whether we are dealing with a conditional limitation or a condition subsequent. The result would be the same. Plaintiff calls attention to section 76-299, R.R.S.1943, which provides that the possibilities of a reverter or right of entry for breach of condition subsequent are not alienable or devisable. Plaintiff misconstrues the statute as it may apply to this case. To adopt his construction would contravene the plain language of the statute. This particular section must be construed in conjunction with the sections immediately following it. To accept plaintiff's construction would require a holding that it is now impossible to provide for reverter or rights of entry or reentry, on breach of a condition subsequent. This patently is not the case. To so hold would require us to nullify the intent of section 76-2, 100, R.R.S.1943, which provides: "At the termination of a trust, however effected, any right of entry or reentry for breach of condition subsequent and any possibility of reverter heretofore or hereafter reserved by or to the trustee and affecting land in this state ceases and determines as to the trustee, but shall, at such termination pass to the person or persons who receive the assets of the trust." (Italics supplied.)
It is also to be noted that the words "hereafter reserved" appear in section 76-2, 101, R.R.S.1943, and the words *37 "hereafter created" appear in section 76-2, 102, R.R.S.1943. It is further to be noted that section 76-2, 102, R.R.S.1943, also provides that the possibility of reverter or rights of entry or reentry for breach of conditions subsequent shall be valid for a period of 30 years from the date of the creation of the condition or possibility of reverter. We interpret section 76-299, R.R.S.1943, to mean that after the possibilities of reverter or right of entry or reentry for breach of condition subsequent are created, they cannot be thereafter conveyed or devised and must terminate within 30 years. In the instant case, if we construe the devise as a condition subsequent, the possibility of reverter terminated by its own terms within the 30-year period.
Plaintiff in his petition stated that he would accept and comply with such conditions and provisions as were determined valid and controlling by this court. To receive the benefit of paragraph III, the plaintiff must make an honest effort to comply with the conditions. The year is now past, and no attempt was made to comply because of the litigation. However, plaintiff's offer was of record within the time limited and he was within his rights in seeking a construction of the will, so plaintiff should be permitted a reasonable period to comply with said conditions. Where there has been an honest effort to comply, conditions subsequent should be liberally construed to avoid forfeiture. See Erskine v. Board of Regents, 170 Neb. 660, 104 N.W.2d 285. We determine that plaintiff should be allowed 6 months from the entry of the mandate herein to comply with the conditions subsequent. In the event of noncompliance, the property passes under subparagraph C of paragraph III to the residuary legatee and devisee for the benefit of the "William Webermeier Scholarship Fund Trust."
For the reasons given, the judgment of the trial court is reversed and the cause is remanded for the entry of a judgment in conformity with this opinion.
Reversed and remanded.
WHITE, Chief Justice (dissenting).
The majority opinion does not consider nor discuss what I consider to be the fundamental issue involved in the disposition of this case. I am in agreement with the detailed and rather fine-spun analysis reaching the conclusion that the devise here constitutes an executory or conditional limitation. However, the conditional or executory limitation is clearly void and of no effect whatsoever because it constitutes an illegal restraint on alienation.
The strength of the intent statute is urged in the majority opinion. But for centuries the dead hand of a testator has been carefully restrained by rules of positive law prohibiting an intent that interferes unduly with the absolute necessity of the freedom of alienation and use of land in a political and economic system fundamentally based on the private ownership and use of land. For many years in the early history of our law in Nebraska our court wavered in this general area. Then, in one of the leading cases in this country this court firmly committed itself to the doctrine of freedom of alienation of property when opposed to the unrestrained intent of a testator in Andrews v. Hall, 156 Neb. 817, 58 N.W.2d 201, 42 A.L.R.2d 1239 (1953). There the rule is stated as follows: "The general rule that restrictions against alienation of real estate vested in fee simple are against public policy and void is a rule of substantive law which remains unaffected by the intent statute. It is a rule to be applied in all cases falling within it." (Emphasis supplied.)
In the instant case Richard Cast was devised a fee simple estate subject to the requirement that he or a member of his family live on the land for 25 years and with a limitation over to the residuary legatee upon breach of condition. This devise was in form a condition subsequent but due to the limitation over there can be no question, as the majority opinion states, that what the estate created was a fee simple subject to an executory limitation. The *38 language of the principle enunciated by Andrews v. Hall, supra, needs no paraphrasing or further explanation. It is directly applicable here. The case stated: "A restraint on alienation in the form of a condition subsequent, forfeiting or terminating the fee simple estate, or providing for a limitation over upon breach of the condition, is void." (Emphasis supplied.)
While this would appear clear from a simple reading of the conditional limitation imposed here I will indulge in a further analysis of the nature of this devise.
The dominant purpose of the testator is succinctly stated by the majority as being to force compliance with the conditions of living on the land for 25 years if the nephew was to keep his interest and if he was unwilling the limitation over would be effective. It also appears clear that this condition was tied in with a companion purpose, if not a dominant one, to perpetuate the family name of Webermeier. In any event it cannot be doubted that the testator intended to prohibit in any practical sense any alienation of the land for a 25-year period.
Could Richard Cast make any effective alienation when clear title in a third party would be subject to such a condition? What kind of a market would exist for such a title? What of the whims of the devisee Richard Cast during the 25-year period? Would the death of Richard Cast in the 25 year period make operative the conditional limitation? Is there any practical or effective alienability at all for a period of 25 years? The only possible answer is "no." How could the land be used as collateral in obtaining credit? And even on a color-matching basis, how could this case be distinguished from Andrews v. Hall, supra, where the prohibitive restriction was against a remainderman selling, mortgaging, or disposing of his interest prior to the death of the life tenant? The practical effect upon Richard Cast's power of alienation is exactly the same. One of the primary incidents of ownership in fee simple is the right to possession, the right to convey it, sell it, or encumber it. We have a complete gap for 25 years in a practical alienability of this property. The purpose of the condition was to perpetuate the Webermeier name. The language of the devise conclusively shows that the limitation over was designed to enforce the 25-year possessory or "living" period upon Richard Cast. Cast must earn his title by a 25-year living on the property and in the meantime it is removed from the merchantable stream of alienable real estate. It cannot be plotted, developed, improved, or used by a purchaser as a part of the normal incidents of fee title.
In Peters v. Northwestern Mutual Life Ins. Co., 119 Neb. 161, 227 N.W. 917, 67 A.L.R. 1311 (1929), a restraint against sale or encumbrance which ran for a 10-year period from the date of execution of the will was upheld as valid. In overruling this case the court in Andrews v. Hall, supra, stated: "The validity or extent of one's title to real estate ought not to rest upon considerations of reasonableness in the imposing of restrictions. Such a relaxation by judicial interpretation can only bring confusion where certainty ought to exist." (Emphasis supplied.) The restrictions in the instant case run for a period of 25 years from the date of the testator's death. The majority is without mention flouting the command of Andrews v. Hall, supra, and resurrecting a case long since dead. The evil in restraints on alienation as clearly demonstrated by case law is not restrictions on how the property is to be used but rather restrictions on who can use the property.
At this point it may be well for us to understand the importance and the vitality of the principle stated in Andrews v. Hall, supra. In that case this court wisely turned away from its previous course. A reading of the authorities in this area, while abstruse in nature, leads one to the inevitable conclusion that this conditional limitation is void as a restraint against alienation. I *39 generalize the applicable principles in this area. The conceptual argument to begin with is that the law defines the exact nature of every estate in land and that each has certain incidents which are provided by law, and that one of the principal incidents of a fee is alienability. See, Manning, The Development of Restraints on Alienation Since Gray, 48 Harv.L.Rev. 373 (1935). There are many reasons for restraining the intent of a testator. The first of two reasons most often given for holding restraints void is that a restraint is repugnant to the nature of the fee. Murray v. Green, 64 Cal. 363, 28 P. 118 (1883); Eastman Marble Co. v. Vermont Marble Co., 236 Mass. 138, 128 N.E. 177 (1920); Andrews v. Hall, supra; 5 Tiffany, Real Property, s. 1343, p. 161 (3d Ed., 1939); Manning Harv.L.Rev., at p. 401. The danger of the type of restraint involved in this case was realized as far back as Coke. He stated that restraints were void not only because they were repugnant to the fee, but because "it is absurd and repugnant to reason, that a tenant in fee simple should be restrained, of his power to alien." See, Coke upon Littleton, 223a.
The second, and probably the more important and more practically oriented reason for holding restraints of this nature void, is that a restraint by taking land out of the flow of commerce is detrimental to the economy and the basic principles of a free competitive society. See, Gray, Restraints on Alienation, s. 21 (2d Ed., 1895); 6 Powell on Real Property, 1 (1969); 5 Tiffany, Real Property, s. 1343, p. 161 (3d Ed., 1939). One of the best statements is contained in Simes and Smith, The Law of Future Interests, s. 1115, p. 8 (2d Ed., 1956), where it is stated: "In brief, the law is concerned primarily with practical alienability, not with a theoretical power of alienation. All these rules tend primarily to further practical alienability. Whether a given provision will be held valid or not depends on a number of considerations, but, reduced to their lowest terms, these considerations amount to no more than this: One must consider, first, the extent to which the sort of provision in question tends to decrease practical alienability; and, second, the purpose of the restraint in question." (Emphasis supplied.)
The primary considerations underlying the prohibition against restraints on alienation is that they are economically undesirable and that the dead hand should not be allowed to control the living. Restraints on alienation are economically undesirable in that they tend to produce frozen assets and, without prohibitory rules, productive property would be rendered useless whenever one in whom ownership is inalienably vested could not use it himself. The dead hand rule is, simply stated, that society is better off if property is controlled by its living members who are cognizant of every changing economic condition than if controlled by the dead.
As stated generally by the authorities, an analysis or exploration as to the latitude of a permissible restraint on alienation must be governed by a balancing of the beneficial character of the purposes of the restraint as against the extent to which alienability would be hindered, if the provision in question is held to be valid. In the light of the nature of this devise could there be any question as to what the conclusion of the court should be in this case? There is no purpose here to accomplish a gift over to the scholarship fund. It is clear, and is in effect conceded by the majority opinion, that the "limitation over" had as its design the imposition of compulsory possession or "living" by Richard Cast for a period of 25 years and this in turn for a purpose related to the perpetuation of the family Webermeier name.
Another example of the repugnancy of this restraint to the base fee is pertinent. As a result of the devise Richard Cast became a tenant in common with his incompetent mother and thus was not entitled to exclusive possession. The majority feels it *40 is quite relevant that the cotenant is Richard Cast's incompetent mother and that he is her sole and only heir. I submit that the fact is immaterial as the decisions of this court in cases of this type should never hinge on the sole issue of who the cotenant may be, the cotenant's competency, or who the cotenant's heirs are.
Would the majority result be different if the cotenant was not Richard Cast's mother? If she was not incompetent? If he was not her sole and only heir? If so, what would the majority position be if the cotenant regained her competency and made a will disinheriting Richard Cast?
This leads us to a final conclusion that this condition imposed by the testator is in derogation of one of the basic rights of joint property owners in the right of partition. S. 25-2170.01, R.R.S.1943. We must realize that partition in kind in this situation as a practical matter is almost impossible. The right to partition is absolute and fulfills a fundamental public policy in settling conflicting rights to possession, eliminating confusion as to title, and restoring to a unity of use and title enhancing the economic productivity of land. It would seem that Richard Cast would clearly be foreclosed of the right to partition without violating the restrictions imposed upon him. How could a sale be held that would be effective to give a purchaser clear title when Cast is required to remain in possession? What would be the effect upon Richard Cast's title and right to the proceeds if his mother regained her competency and forced a partition sale? We are aware of the doctrine of Peterson v. Damoude, 98 Neb. 370, 152 N.W. 786, 14 A.L.R. 1238, holding that a prohibition against partition is not a restraint on alienation when the undivided share is assignable. But here there is and cannot be for a period of 25 years an assignable interest in any practical sense of Cast's interest, under the condition imposed. The title itself is prohibited from having the basic element necessary in a partition action, that the purchaser shall acquire a fee title with the exclusive right to possession.
Although the majority opinion does not discuss these issues we anticipate, as the result of our research, that cases could be cited holding that "use" restrictions in deeds and testamentary dispositions are valid and that they do not interfere with the legal right of alienation. These cases cannot be equated with the restriction in the instant case. In the first place such cases as I have been able to discover are not close in either the nature of the conveyance or restriction attempted to be imposed. In the second place in all of these cases a restriction upon the kind of use (e. g., against the use of alcoholic liquor), does not restrain alienation because the property may be conveyed to anyone subject to the restriction. The restriction here is not upon how the land may be used or a prohibition of some individual particular use. The prohibition here is upon who shall have all of the uses of the property, thus effectively forbidding alienation.
Nor may it be argued in this case that a distinction between a direct and an indirect restraint will sustain this condition. There is a statement in Simes and Smith, The Law of Future Interests, 2d ed., c. 37, s. 1111, et seq., that could be construed to infer that any "indirect" restraint, short of the violation of the rule of perpetuities, is valid. It is very clear that when this statement is read in context the writer's classification is purely for the purpose of clarification in analyzing whether the restraint is a disabling, promissory, or forfeiture restraint. The reason for this is obvious because a drafter of a deed or a will could easily avoid an illegal restraint on alienation by simply clothing it in the form of an indirect restraint. Fortunately, as Simes himself recognizes, neither the Restatement of Property nor the classic writers on restraints of alienation, Gray or Kales, recognizes such a distinction. See, Simes and Smith, The Law of Future Interests, c. 37, s. 1111, p. 4, n. 3.
*41 It is what the condition does with reference to practical alienability that is the test. This is made abundantly clear by Simes and Smith, The Law of Future Interest, 2d ed., ss. 1111 and 1112, pp. 4 and 5 wherein is stated: "As used in this treatise, the expression `restraint on alienation' refers not merely to the restriction of the legal power of alienation, but also to the restriction of alienability as a practical matter. * * * These provisions may assume a variety of forms. Thus, the conveyance or devise may contain a direction to the effect that the grantee or devisee shall not alienate, or a condition to the effect that if he attempts to alienate, his estate shall be subject to forfeiture, or there may be a contract binding on the grantee to refrain from alienation. A further classification of direct restraints is set out later." (Emphasis supplied.)
Such a superficial distinction, is avoided by the Restatement of Property, and by Gray and Kales, the classic writers in this area. We are dealing here with what we all recognize as a "forfeiture restraint," that is, a violation of the condition forfeits the estate. Such a restriction is valid only if the "restraint" is reasonable under the circumstances and if it does not violate the rule against perpetuities. See Restatement of Property, c. 30, ss. 406 and 407. The comment on these sections states: "Even though a restraint on alienation is a forfeiture or promissory restraint and is qualified so as to permit alienation to some though not all possible alienees, the restraint must still be found to be reasonable under all the circumstances. * * * Each case must be thoroughly examined in the light of all the circumstances to determine whether the objective sought to be accomplished by the restraint is worth attaining at the cost of interfering with the freedom of alientation or to determine whether the particular interference with alienability is so slight as not to be material."
There is no problem here of contention that the creation of a contingent remainder or some other future interest in property constitutes an illegal restraint on alienation. That is a problem that belongs to the application of the rule against perpetuities. What we are dealing here with is the creation of an absolute estate in fee simple, with no attempt to create a future interest but only the imposition of a forfeiture restraint to enforce a condition repugnant to alienation.
How far we are departing from the sound doctrine of Andrews v. Hall is demonstrated in the latest annotation to Simes and Smith, The Law of Future Interests, 2d ed., at s. 1150.5, p. 13 (1969), wherein it is stated: "Until recently, only Kentucky and Nebraska had given support to any doctrine that `reasonable' restraints on the alienation of a legal estate in fee would be sustained. Moreover, as indicated in the preceding section, Nebraska has recently overruled the doctrine." (Andrews v. Hall, supra).
Richard Cast is now 48 years of age. At the age of 73, and then only, he will receive a fee simple title in any realistic sense. In the meantime, he has a choice of forfeiting the estate or living on the property in serfdom. The practical alienability or partition of this property is nil during that period of time. The restrictions imposed are clearly repugnant to the fee created as Richard Cast during the 25-year period has none of the most basic rights a fee owner. Furthermore, it appears abundantly clear that this condition will serve only the capricious and unreasonable purpose of perpetuating the Webermeier name. I submit that the doctrine and principles of Andrews v. Hall, supra, should be followed.
The undoubted intent to give Richard Cast the fee simple should be enforced, and the restriction requiring personal possession declared void.
McCOWN, J., joins in this dissent.
CARTER, Justice (concurring).
The dissent in this case relies heavily on Andrews v. Hall, 156 Neb. 817, 58 N.W.2d *42 201, 42 A.L.R.2d 1239. That case holds that a direct restraint on alienation of an estate in fee simple absolute is void. With this holding I am in full accord. In the case before us, however, the restraints against alienation are incidental to the conditions subsequent provided for by the will. Such conditions subsequent are void only when they violate the rule against perpetuities, and this rule is not violated in the instant case.
The difference between a direct restraint which is void and an indirect restraint which is valid if not violative of the rule against perpetuities, is generalized as follows: "This difference leads to a further generalization which seems warranted by the specific rules discussed in the following chapters: If the restraint is direct, it may be bad regardless of the length of time it is to last. On the other hand, if the restraint is indirect, it will invariably be valid if it is to terminate within a life or lives in being and twenty-one years beyond; but, if it is to last longer than that period, the indirect restraint may be bad." Simes and Smith, The Law of Future Interests (2d Ed.), s. 1116, p. 10.
Courts generally, including the ancient common law courts of England, have developed a judicial predilection for minimizing the permissible fetterings of property. Direct restrictions on the alienability of property conveyed by a fee simple title were rather easily disposed of by holding them to be void because of their complete repugnancy with a fee simple title. Hence restrictions upon a grantee of a fee simple title to sell, mortgage, or otherwise encumber are void as we held in Andrews v. Hall, supra. But the right of a grantor to convey a fee simple title subject to conditions that do not directly restrict alienability, although they tend incidentally to do so, is not so simple a problem. Such restrictions have not been held to be void, but to preserve property from undue fettering of the title by conditions indirectly affecting alienation, the courts have subjected such conditions to the rule against perpetuities. By such a method conditions not directly restricting alienation are not void, but are limited in time. See Restatement, Property, Part I, p. 2123. This appears to be the state of the law at present and it is for these reasons that I concur with the majority opinion.
NEWTON, J., concurring.